**ROPER CORPORATION, Appellant,**

v.

**LITTON SYSTEMS, INC., Appellee.**

**Appeal No. 84–1711.**

United States Court of Appeals,
Federal Circuit.

March 15, 1985.

Frank P. Porcelli, Boston, Mass., argued for appellant. With him on brief were John M. Skenyon, W.R. Hulbert and Fish and Richardson.

J. Robert Dailey, argued, Morgan, Finnegan, Pine, Foley & Lee, New York City, for appellee. With him on brief was John Haurykiewicz, Minneapolis, Minn.

Before MARKEY, Chief Judge, DAVIS, Circuit Judge, and RE, Judge.*

MARKEY, Chief Judge.

Appeal from an order of the United States District Court for the Northern District of Illinois, Eastern Division, denying Roper Corporation's (Roper's) motion for preliminary injunction. 589 F.Supp. 823. We affirm.

## BACKGROUND

Roper is the assignee of United States Patent No. 4,028,520, issued June 7, 1977 to Sumner H. Torrey (the Roper patent), relat-

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

ing to a self-cleaning "common cavity" oven, i.e., an oven capable of operating in three modes: (1) conventional thermal cooking, (2) microwave cooking, and (3) pyrolytic self-cleaning (oven temperature of about 900°F. decomposes soil on cavity surfaces). A more detailed description of the invention and of the claims of the Roper patent appears in *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 955, 220 USPQ 592, 595 (Fed.Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984).

Sears, Roebuck & Co. and Roper entered a joint venture for development and marketing of the oven. Roper filed a patent application on February 26, 1976, which issued as the Roper patent on June 7, 1977. Roper and Sears jointly test-marketed their common cavity oven in 1976.

The Roper oven was a commercially successful product, at least during the early years. *See Raytheon Co. v. Roper Corp.*, 724 F.2d at 954, 220 USPQ at 594. On September 9, 1980, the Raytheon Company sued for declaratory judgment that the Roper patent was invalid and Roper counterclaimed for infringement. *Id.* at 955, 220 USPQ at 595.

Sears decided to withdraw from the common cavity oven market in mid-1981, and Roper discontinued producing its ovens in mid-1982, after making and selling over 24,000 patented ovens at an average retail price of about $1,100, for a total approximating $25 million.

In *Raytheon*, this court affirmed the district court's judgment that claim 1 was invalid, that claims 2–7 were not invalid, and that the latter claims were infringed by Raytheon's ovens. *Id.* at 962, 220 USPQ at 601.

### Suit Against Litton

Soon after this court's mandate issued in *Raytheon*, Roper sued Litton, alleging its 700 series to be an infringement. On May 22, 1984, Roper moved for a preliminary injunction enjoining Litton from manufacturing and selling its 700 series ovens, and from providing to third parties the technol-ogy of the ventilation system in the accused ovens.

With its motion, Roper submitted declarations by Sumner Torrey (the inventor), Norman Kirschke (Vice President of Engineering at the Jenn-Air Company, and formerly employed by General Electric on its self-cleaning common cavity oven project), Robert Hilger (Roper's Manager of Product Integrity and Reliability), and Robert Triplett (Roper's former Vice-President of Engineering and Sales). Litton took the depositions of Kirschke and Torrey, and submitted affidavits of Robert Lowe (Litton Group Patent and Licensing Counsel), Gary Pearson and Glenn Spitzer (Operations Controller and Manager of Marketing Administration, respectively, of Litton's Microwave Cooking Products Division), Ronald Lentz (a Litton Staff Engineer), and Russell Hoeker (a Litton Senior Engineer). Roper took Hoeker's deposition.

At a June 18th hearing, Kirschke, Torrey, Triplett, and Hilger testified and were cross-examined. Litton called no witnesses, relying on its affidavits, on the depositions of Kirschke, Torrey, and Hoeker, and on cross-examination of Roper's witnesses.

Litton chose not to contest validity of the Roper patent at this stage. It opposed the motion on the grounds that Roper had not shown: (1) any danger of its suffering immediate irreparable injury; (2) that any harm it would suffer from denial of the injunction would outweigh the harm Litton would suffer from a grant of the injunction; (3) that a preliminary injunction would serve the public interest; and (4) a likelihood of success on the merits. On July 11, 1984, the parties submitted extensive post-hearing briefs and proposed findings and conclusions.

### District Court Proceedings

On August 10, 1984, the district court denied Roper's motion in published memorandum opinion because "Roper had failed to demonstrate that it would suffer immediate irreparable injury if a preliminary injunction did not issue." 589 F.Supp. 823, 826.

The trial court looked to the four factors set forth in *O'Connor v. Board of Education,* 645 F.2d 578, 580 (7th Cir.), *cert. denied,* 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981):

(1) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue;

(2) whether the threatened injury to the plaintiff outweighs the threatened harm the injunction may inflict on the defendant;

(3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and

(4) whether the granting of a preliminary injunction will disserve the public interest.[1]

■ The district court stated that "unless the plaintiff establishes that the defendant is financially irresponsible, a court will not grant a preliminary injunction enjoining infringement of a patent," citing *Signode Corp. v. Weld-Loc Systems, Inc.,* 700 F.2d 1108, 218 USPQ 293 (7th Cir. 1983), in which the court said, at 1111, "[a]s a general rule, 'a defendant's ability to compensate plaintiff in money damages *precludes* issuance of a preliminary injunction'." (Emphasis added.)[2]

Because Litton chose not to contest validity, and believing that infringement had been clearly established, Roper said it was entitled to a presumption of irreparable harm, citing *Smith International v. Hughes Tool Company,* 718 F.2d 1573, 1581, 219 USPQ 686, 692 (Fed.Cir.1983). The district court held that *Smith International* was distinguishable and that Roper had failed to present "such a strong showing" of validity and infringement as would warrant a presumption of irreparable harm.

Noting that Litton had not contested validity in response to Roper's motion, the district court stated that "unlike Smith [Litton] has had no opportunity to challenge the validity of the patent in this suit or in a separate action."

Although it entered no finding on infringement, the district court stated that "Litton has not admitted infringement. To the contrary, Litton has made a strong showing that its actions do not infringe the Roper patent." In a footnote, the district court stated, "Because this Court may be called upon to decide the infringement issue at a later date, a detailed discussion of the merits of Litton's defense will be reserved."

In viewing Roper's allegations of irreparable injury, the district court noted that Litton was no longer manufacturing the accused ovens, that Roper had failed to prove Litton "financially irresponsible," and that Litton has more than sufficient assets to satisfy any conceivable judgment. It therefore concluded that Roper had "clearly failed" to demonstrate that it would suffer irreparable injury if an injunction did not issue.

## OPINION

### Introduction

As it did in the district court, Roper argues here that validity has been overwhelmingly established by the decision in *Raytheon, supra,* and by the absence of challenge by Litton in response to the mo-

---

1. This court, as have other courts, considered the same factors on review of appeals from the grant or denial of preliminary injunctions in *Litton Systems, Inc. v. Sundstrand Corp.,* 750 F.2d 952, 224 USPQ 252 (Fed.Cir.1984), *Stein Associates, Inc. v. Heat and Control, Inc.,* 748 F.2d 653, 223 USPQ 1277 (Fed.Cir.1984) and *Smith International, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 219 USPQ 686 (Fed.Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983), noting the need for balancing the relative weight given each.

2. Equity requires that no one element be dispositive, that each be weighed and measured against others and against the relief demanded. We therefore reject the view that an alleged infringer's "ability to compensate" must end a court's inquiry. To so hold would be to encourage infringement by the rich, to cause frequent devastation of a less affluent patentee's business, and to suggest the ready grant of injunctions against the less affluent among alleged infringers. That result would be unsupported by statute and manifestly inequitable.

tion. Roper asserts that the district court's statement on noninfringement, unsupported by findings, was erroneous. Because it has thus prevailed on validity and infringement, says Roper, it is entitled to a presumption of irreparable harm, citing *Smith International.* Roper also says Litton's solvency was not a proper ground for denying injunctive relief.

Litton says the issue is whether the district court abused its discretion in denying the motion, that Roper failed to establish a likelihood of success on infringement, that no accused range had been made since April, 1984, and that it is financially responsible. Further, Litton argues that because Roper is not presently practicing the invention, and has not done so for several years, absence of irreparable injury must be presumed.

### Likelihood of Success—Validity

Litton says its failure to contest validity before this court or the district court "is a far cry from an admission of validity," that it has "serious reservations" about validity, and that question must wait "for another day". Because it was not a party in *Raytheon,* Litton says, correctly but irrelevantly on this appeal, the decision in that case is not binding on it.

■ The patent statute, 35 U.S.C. § 282, is unambiguous: "A patent shall be presumed valid ... [T]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." A patent is born valid. It remains valid until a challenger proves it was stillborn or had birth defects, or it is no longer viable as an enforceable right.[3] Litton's silence leaves untouched at this stage what the statute presumes, namely, that Roper's patent is valid.

■ The district court mistakenly and irrelevantly stated that Litton "has had no opportunity to challenge the validity of the patent in this suit or in a separate action." Litton had full opportunity to show, in response to the motion, if it could, that Roper had no reasonable likelihood of success on the issue of validity. That was its burden. Its failure to grasp its opportunity means that the district court should have treated, and this court must treat, Roper's likelihood of success on validity as having been established.

### Likelihood of Success—Infringement

■ As above indicated, the district court indicated that "Litton has made a strong showing that its actions do not infringe." Nonetheless, and although the parties submitted extensive post-hearing findings and conclusions, the district court made no findings and did not otherwise point to evidence of record supporting that statement. The question before the court was not whether there was infringement, and not what Litton had shown. The question was whether Roper had shown a reasonable likelihood of success on the infringement issue. The court's statement would, however, appear to have been a back-handed indication that Roper had not, in the district court's view, made a reasonable showing of likelihood of success in proving infringement.[4] Roper devotes considerable effort to try its infringement claim in this court, asserting infringement of all claims under the doctrine of equivalents and literal infringement of claim 2.

---

**3.** Absent action by the Patent and Trademark Office under the reexamination statutes, 35 U.S.C., Chapter 30.

**4.** Litton moved for summary judgment of noninfringement on July 25, 1984, saying no genuine issue of material fact existed. That motion was denied on February 14, 1985, the district court correctly pointing out that "[e]quivalence is question of fact."

In view of our disposition, and the lack of explication by the district court, we express no view on whether Litton "made a strong showing that its actions do not infringe." The district court's reference to "actions" in the present tense may have been based on its recognition that Litton is not *currently* making and selling the accused oven.

Nor does this court express here a view on whether the accused ovens infringe any claim of the Roper patent. That question must await an initial determination by the district court.

Roper says the parties agree "as to the basic facts concerning the infringement," and that it "is more than willing to rely on the existing record." Roper then urges this court to decide the issue of infringement, because "all that is really left is a dispute about the interpretation of certain claim language, which is, of course, a matter of law," citing *ACS Hospital Systems, Inc. v. Montefiore Hospital*, 732 F.2d 1572, 221 USPQ 929 (Fed.Cir.1984), and *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1569, 219 USPQ 1137, 1140 (Fed.Cir. 1983).

■ Roper's request that this court make the finding of infringement the district court expressly reserved is wholly inappropriate. Roper misconstrues the *appellate* function of this court and the decisional criteria in considering motions for preliminary injunctions. Substantive issues, such as validity and infringement, are not raised for final resolution by such motions. This court reviews final judgments and there has been no judgment entered on those issues in this case.

Roper's reliance on *ACS Hospital* and *Fromson* is misplaced. In those cases, judgment had been entered on the issue of infringement. Here, there has been only an equivocal statement by the district court, a statement related only indirectly, if at all, to the issue before it, i.e., whether Roper had shown a "reasonable likelihood of success" on the infringement issue.

The issue of infringement has not been tried, and Roper may well at trial meet its burden of proof on that issue. Roper, as seeker of a preliminary injunction, bore the burden of showing at this stage a reasonable likelihood of success in proving infringement at trial. It submitted its claims and proved the structure of the accused oven. There is little more it could have done. We cannot say on this record whether the district court would have erred if it had found that Roper had not met the reasonable likelihood of success criterion for issuance of a preliminary injunction in respect of infringement. That question need not be decided, however, for Roper clearly failed to meet the criterion of showing irreparable injury.

### Presumption of Irreparable Injury

If Roper had shown a reasonable likelihood of success on validity and infringement, it would have thereby met only one criterion needed for obtaining a preliminary injunction. Three criteria remain, one of which is irreparable injury. Before a showing of likelihood of success may be seen as also meeting that criterion, it must be not merely a reasonable but a strong showing indeed.

In *Smith International*, this court held that where validity and infringement have been *clearly* established, "immediate irreparable harm is presumed." 718 F.2d at 1581, 219 USPQ at 692. As explained in footnote 7, it adopted a "rule of irreparable injury" from copyright cases. *Id.* at 1579 n. 7, 219 USPQ at 692 n. 7. That rule is that a "clear showing" of validity and infringement of the copyright will give rise to a presumption of irreparable injury. *See generally Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 620, 214 USPQ 33, 43–44 (7th Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982); *Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.*, 600 F.2d 1184, 1187–88, 203 USPQ 321, 323–24 (5th Cir.1979) (substantial likelihood of success); *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 94, 194 USPQ 401, 402 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978). The same is generally true of preliminary injunctions granted in protection of a trademark owner's rights. *See Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 649–50, 214 USPQ 15, 21 (6th Cir.1982), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982); *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 189–92, 208 USPQ 169, 171–74 (2d Cir.1980); *Miss Universe, Inc. v. Flesher*, 605 F.2d 1130, 1132–34, 204 USPQ 354, 356–57 (9th Cir.1979); *Helene Curtis Industries, Inc. v. Church and Dwight*

*Co., Inc.,* 560 F.2d 1325, 1330, 195 USPQ 218, 220 (7th Cir.1977), *cert. denied,* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978).

Though courts have on occasion been reluctant to presume that irreparable injury arises from patent infringement, no warrant exists in law to distinguish the criteria for presuming irreparable injury to the property right created by letters patent from those available to protect the property right created by copyright. Each of those property rights is granted by the United States under its constitutionally granted power, "to promote the progress of science and the useful arts ... by securing to authors and inventors the exclusive right to their respective writings and discoveries." U.S. CONST., art. I, § 8, cl. 8. Each is personal to the owner, having as the touchstone of their worth the exclusive right. *See Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 599–600 (Fed.Cir.1985).

Looking to the facts of *Smith International,* the district court noted that an earlier court determination of patent validity and Smith's failure to contest infringement "removed any question" as to validity and infringement in that case. Distinguishing *Smith International,* the district court refused to apply a presumption here because it thought Roper did not establish validity and infringement by "such a strong showing." [5] *See* 5 D. CHISUM, PATENTS § 20.04[1][c][i] (1982). As above indicated, validity was unchallenged. To the extent that the district court thought Roper had made no strong showing of validity, it erred. The district court's statement must (in view of its statement about Litton's showing of non-infringement) be read as

indicating that it thought a strong likelihood of success respecting *infringement* was not shown. Again, we need not here decide whether the district court erred in so indicating.

■ If Roper were granted the benefit of a presumption of irreparable injury, that grant would not be dispositive of whether its requested preliminary injunction should issue. The presumption does not change the ultimate equitable showing needed to justify a preliminary injunction. Like most legal presumptions, it is rebuttable by clear evidence that it is overcome in the case at hand. The presumption merely requires that an alleged infringer confronted by a patentee's strong showing of validity and infringement bring forward evidence that irreparable injury would not actually be suffered by the patentee if the motion for preliminary injunction were denied. The presumption rests on a strong showing that a valid patent is being infringed. When that is true, irreparable injury may be presumed. When, as here, infringement is neither actually occurring nor is reasonably likely, the basis and need for the presumption crumbles.

### Irreparable Injury

■ Having reviewed the record and fully considered the parties' contentions, we see no abuse of the district court's discretion. Roper may have made a strong showing that *if* Litton made or sold the accused oven, infringement of a valid patent would occur. Such a showing would nevertheless be insufficient in this case to establish that Roper would suffer irreparable injury as a result of a denial of its motion. That insufficiency is not here sup-

5. A showing of a *"reasonable* likelihood of success" on validity and infringement is sufficient, when coupled with separate showings of irreparable injury, favorable balance of injury, and the public interest, to justify the grant of a motion for preliminary injunction against patent infringement. As this court said in *Smith International,* "[w]ithout the right to obtain an injunction, the right to exclude granted the patentee would have only a fraction of the value it was intended to have, and would no longer be

as great an incentive to engage in scientific and technological research." 718 F.2d at 1577–78, 219 USPQ at 690.

We do not agree with Roper's assertion that the district court read *Smith International* too narrowly, i.e., in a manner that could improperly limit the availability of a presumption of irreparable injury when a *strong* likelihood of success on the validity and infringement issues has been shown and the accused product is being made, used, or sold.

planted or overweighed by considerations of the balance of equities and the public interest, neither of which were strongly argued.

■ The record discloses that Litton does not presently make, and has no immediate plans to make, the accused oven. The record also shows that Roper is not presently practicing its invention, and that it does not have immediate plans to do so. We will not, as Litton would have us do, hold that failure to practice the invention means that "absence of irreparable injury must be presumed." A patentee that does not practice, and may never have practiced, his invention may establish irreparable harm, e.g., by showing that an existing infringement precludes his ability to license his patent or to enter the market. Roper, however, has made no clear showing that it would be precluded from either activity by anything Litton is doing or by denial of the extraordinary remedy it seeks. Roper's argument that past infringement caused its cessation of manufacture and that its reentrance into the market is prohibited by the possibility of Litton's reentrance, or by the possibility of Litton's sale of its oven business, is conjectural and insufficiently supported to be persuasive.

At best, Roper has demonstrated mere apprehension of potential future infringement, primarily from the possibility of Litton's sale of its oven technology to a company that might infringe. Without more, such fears cannot justify the issuance of preliminary equitable relief. This court has stated, "[n]o authority anywhere supports the notion that a preliminary injunction may issue in response to rumors of a threat of infringement." *Chemical Engineering v. Marlo, Inc.*, 754 F.2d 331, 222 USPQ 738 (Fed.Cir.1984). Though Roper has cited in its complaint acts which, if proven, might constitute past infringement, there is nothing of record establishing *present* infringement or an *immediate*

threat of renewed infringement.[6] Thus, the status quo is maintained without injunctive relief *pendente lite*.

AFFIRMED.

---

6. Though Litton has an inventory of 175 accused ovens, we cannot say that the district court would have abused its discretion in viewing such potential sales as *de minimus* in considering the motion for preliminary injunction.

If Litton does sell those ovens, and Roper prevails at trial, the damages payable as a result of those sales would doubtless be added to the final judgment.