The TORO COMPANY, Plaintiff,

v.

TEXTRON, INC., Defendant.

No. C–C–87–456–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Nov. 12, 1987.

J. Carlton Fleming, Womble Carlyle Sandridge & Rice, Charlotte, N.C., William L. Mathis, David D. Reynolds, Burns, Doan, Swecker & Mathis, Alexandria, Va., for plaintiff.

Wayne Huckel, Kennedy Covington Lobdell & Hickman, Charlotte, N.C., Barry

Graham, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Plaintiff's Motion for a Temporary Restraining Order in this patent infringement case. Plaintiff alleges in its Complaint that Defendant's single stage snowthrower Models 420 and 420E infringe Plaintiff's Patent No. 4,694,594. Contemporaneously with filing its Complaint, Plaintiff requested an expedited hearing on a Motion for Preliminary Injunction, in which Plaintiff sought to enjoin the production and sale by Defendant of all "single stage" snowthrowers. Pursuant to Plaintiff's *ex parte* request, this Court set down Plaintiff's Motion for Preliminary Injunction for hearing on Thursday, October 29, 1987 at 10:00 a.m. Defendant objected to having the hearing on such short notice, and filed a Motion to extend time both to answer Plaintiff's Complaint and to respond to Plaintiff's Motion for a Preliminary Injunction. By Order of October 27, 1987, this Court granted Defendant's Motion, ordered that Defendant file an answer to the Complaint and to the Preliminary Injunction on or before Friday, November 13, 1987, and set down Plaintiff's Motion for Preliminary Injunction for hearing on Friday, November 20, 1987 at 10:00 a.m. Plaintiff then filed a Motion for Temporary Restraining Order on October 29, 1987, seeking to restrain Defendant from selling certain of its snowthrowers until the November 20 hearing on Plaintiff's Motion for Preliminary Injunction. The Court set down the Motion for Temporary Restraining Order for a full adversary hearing on Friday, November 6, 1987 at 10:00 a.m.

The Motion for Temporary Restraining Order was somewhat more limited than was the Motion for Preliminary Injunction. While the Motion for Preliminary Injunction sought to enjoin Defendant and those acting in concert with it from "making, using, or selling the Jacobson Models SNO–420 and SNO–420E snowthrower or any colorable imitation thereof and from otherwise infringing United States Letters Patent No. 4,694,594, whether directly, contributorily, or by active inducement, during the pendency of this action," the Motion for Temporary Restraining Order sought to restrain Defendant and those acting in concert with it "from distributing, selling, or otherwise transferring snowthrowers having in them impellers of the type shown in Toro's Motion Exhibit 4." The distinction arises from Defendant's claim that it has ceased production of the "old-design" snowthrowers having an impeller as shown in Plaintiff's Motion Exhibit 4, and has replaced such design with a "new-design" snowthrower, still denominated as Model 420, but differing from the "old-design" machine. Defendant claims that, even if its "old-design" snowthrower did infringe Plaintiff's patent, the "new-design" snowthrower certainly does not. Thus, in its Motion for Temporary Restraining Order, Plaintiff sought to restrain the sale of the "old-design" snowthrowers Defendant retained in stock, whereas the Motion for Preliminary Injunction seeks to enjoin the production and sale of *all* Models 420 and 420E snowthrowers.

A hearing was held on Plaintiff's Motion for Temporary Restraining Order on Friday, November 6, 1987 at 10:00 a.m. William Mathis of Washington, D.C., argued on behalf of Plaintiff. Barry W. Graham, also of Washington, argued on behalf of Defendant.

## STANDARD OF DECISION

Since the Court held a full adversary hearing on Plaintiff's Motion for Temporary Restraining Order, in effect the Motion was transformed into a Motion for Preliminary Injunction. 11 C. Wright & A. Miller *Federal Prac. & Proc.* § 2951, p. 501 (1973). This is so because the strict rules regarding Temporary Restraining Orders contained in Rule 65(d) are designed to alleviate the harshness of the entry of an *ex parte* order and to ensure that the excluded party is given an opportunity to present its case as soon as possible. Where there is a full adversary hearing on

the issues raised by the Motion, the procedures and rules governing a Motion for Preliminary Injunction are sufficient to protect the parties. The Court hereafter will treat Plaintiff's Motion for temporary restraining order as though it were a Motion for a preliminary injunction.

According to 28 U.S.C. § 1295(a)(1), the Federal Circuit has exclusive jurisdiction over appeals from final orders in patent cases. Thus, the Federal Circuit also has exclusive jurisdiction over appeals from orders granting or denying injunctions in patent cases. *See* 28 U.S.C. § 1292(c)(1). Since the Federal Circuit would decide any appeal from this Court's Order on Plaintiff's Motion, Federal Circuit decisions on the issues raised herein are controlling.

## DISCUSSION

The Court must weigh four factors in determining the propriety of a preliminary injunction: (1) likelihood of success on the merits at trial; (2) irreparable harm if the injunction is not entered; (3) comparison of harm to Plaintiff if the injunction is denied with harm to Defendant if the injunction issues; and (4) public policy. *Datascope Corp. v. Kontron Inc.*, 786 F.2d 398, 400 (Fed.Cir.1986); *Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266, 1269, 1270–72 (Fed.Cir.1985). In reviewing these factors, "[e]quity requires that no one element be dispositive, that each be weighed and measured against others and against the relief demanded." *Roper Corp.*, 757 F.2d at 1269 n. 2.

Injunctions in patent cases are governed by 35 U.S.C. § 283, which reads: "The several courts having jurisdiction of cases under this Title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." The statute places the issuance of an injunction within the trial court's discretion. *Datascope Corp.*, 786 F.2d at 399. In patent infringement cases, however, the preliminary injunction carries more importance than in other cases. Without the power to obtain an injunction, the value of the right granted by a patent—to exclude others from producing as marketing the invention—is lessened. *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1577–78 (Fed.Cir.), *cert. den.*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed. 2d 687 (1983). With these principles in mind, the Court will proceed to an examination of the four factors as they relate to this case.

### A. *Success on the Merits*

█ The plaintiff seeking a preliminary injunction in an infringement action must establish that it likely will succeed in proving on the merits both that its patent is valid and that the defendant has infringed, and will continue infringing the patent. By virtue of 35 U.S.C. § 282, patents are presumed valid. The Federal Circuit takes this presumption seriously: "A patent is born valid. It remains valid until a challenger proves that it was stillborn or had birth defects, or it is no longer viable as an enforceable right." *Roper Corp.*, 757 F.2d at 1270. On a Motion for preliminary injunction, the party opposing the Motion has the burden of showing that the patent owner has no reasonable likelihood of success on the issue of the patent's validity. Absent such a showing, the presumption of validity is sufficient to support a preliminary injunction. *Id.; Power Controls v. Hybrinetics*, 806 F.2d 234, 240 (Fed.Cir. 1986).

At the hearing on the Motion for Preliminary Injunction, Defendant did not challenge the validity of Plaintiff's patent, although it did indicate that it would not concede that the patent was valid. As a result, the presumed validity of Plaintiff's patent remains unassailed, and Plaintiff can be considered to have established, for purposes of this Motion, that its patent is valid.

█ The patent owner bears the burdens both of production and persuasion on the issue of infringement. *Roper Corp.*, 757 F.2d at 1271; *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 n. 4 (Fed. Cir.1983). The patent owner makes out a case of literal infringement if it shows that the allegedly infringing product falls with-

in the claims of the patent. *Smith International,* 718 F.2d at 1579 n. 2. During the hearing, Plaintiff read claim no. 18 of its patent onto Defendant's "old-design" snowthrower. Defendant did not make any objection, nor did it respond with any evidence that any of the claims of the patent did not read on to its "old-design" snowthrower. The Court, therefore, is justified in finding, for purposes of this Motion, that Defendant likely will be able to prove infringement at trial. *See Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 1233–34 (Fed.Cir.1985) (where trial judge examined elements of patented product and of allegedly infringing product and found infringement, no clear error in finding that owner had proven likelihood of success on infringement).

### B. *Irreparable Harm*

■ Plaintiff's allegations concerning irreparable harm rest upon the fact, admitted by Defendant, that, although Defendant allegedly has ceased manufacturing the "old-design" snowthrowers (which Plaintiff contends were copied from Plaintiff's design), Defendant retains "old-design" snowthrowers in stock, which it is selling in competition with Plaintiff's patented snowthrower. Defendant admits that it has approximately 3,500 of these "old-design" snowthrowers in stock. Plaintiff claims that the presence of these infringing snowthrowers on the market not only reduces sales of Plaintiff's snowthrowers, but erodes goodwill that Plaintiff has built up with its customers by having an original and unique product. Further, Plaintiff contends that the presence on the market of Defendant's product threatens the goodwill Plaintiff has built up with its dealers because the dealers are now in the position of justifying the higher price Plaintiff charges for its snowthrower when compared to the lower price Defendant charges.

Defendant's sole defense to Plaintiff's claim of irreparable harm is that it is a large and financially sound company which will be able to pay any damages which might result to Plaintiff from Defendant's infringing activities. In patent cases, however, the ability of defendant to pay damages does not preclude a finding of irreparable harm to the plaintiff if an injunction does not issue. "If monetary relief were the sole relief afforded by the patent statute, then injunctions would be unnecessary and infringers could become compulsory licensees for as long as the litigation lasts." *Atlas Powder,* 773 F.2d at 1233; *see also Roper Corp.,* 757 F.2d at 1269. The Affidavit of Plaintiff's Vice President for Marketing and Development establishes Plaintiff's claimed irreparable injury. The Court finds the Affidavit credible and notes that Defendant has not rebutted any of the claims contained therein. The Court, therefore, finds that Plaintiff has shown that it will be harmed irreparably if an injunction does not issue.

### C. *Public Policy*

■ Patent cases involve two competing public policy considerations. On one hand, courts recognize a policy of protecting patent rights. *Smith International,* 718 F.2d at 1581. On the other, public policy also favors free competition. *See, e.g., id.; Datascope Corp.,* 786 F.2d at 398. During counsels' arguments, however, counsel for Defendant in effect admitted that Defendant had copied Plaintiff's snowthrower rather than developing its own snowthrower. (Defendant contended that the copying was done before the patent was issued, and therefore was perfectly legal.) A patent has issued, the claimed invention of which patent Plaintiff contends are embodied in the snowthrower which Defendant copied. While these issues may remain for final determination at trial, the Court finds that, at this stage, the public policy of protecting patent rights is more strongly implicated here, such that Plaintiff should be able to prevent Defendant from selling what Defendant admits are copies of Plaintiff's machine. The Court, therefore, finds that public policy weighs in favor of granting a preliminary injunction in this case.

### D. *Balance of Hardships*

■ The hardship Plaintiff will suffer if the injunction does not issue essentially is the same irreparable harm which has al-

ready been discussed. On Defendant's side, Defendant could only cite the fact that it will not be able to sell 3500 snowthrowers. The Court therefore finds that the harm to Plaintiff if the injunction is denied outweighs the harm to Defendant if the injunction issues.

On balance, in view of the limited nature of Plaintiff's Motion (limited to old-design snowthrowers), this Court is of the opinion that Plaintiff's Motion should be granted. Plaintiff has a duly issued patent on the snowthrower. Defendant admits that it, at least, copied Plaintiff's machine, and that it has 3500 of these copies still in inventory. The Court therefore will grant Plaintiff's Motion for temporary restraining order (now, preliminary injunction) enjoining the Defendant from selling the approximately 3500 "old-design" snowthrowers, embodying the impeller as shown in Plaintiff's Exhibit 4 to Plaintiff's Motion for preliminary injunction, until such time as this Court may make a further ruling.

### SCHEDULE OF RESPONSES AND HEARINGS

In its Order of October 27, 1987, the Court ordered that Defendant file an answer to the Complaint and to the Motion for preliminary injunction on or before Friday, November 13, 1987, and set down for hearing Plaintiff's original Motion for preliminary injunction on Friday, November 20. At the hearing on Plaintiff's Motion for temporary restraining order, the parties agreed that the hearing on Plaintiff's original Motion for preliminary injunction (which is more extensive than the Motion for temporary restraining order) should be postponed until such time as the parties have had an opportunity to pursue initial discovery in the case. The parties agreed that the Court's initial preliminary injunction (entered on Plaintiff's Motion for temporary restraining order) should remain in effect until such hearing on Plaintiff's original Motion for preliminary injunction. As a result, the time limits in the Court's Order of October 27, 1987, are no longer applicable.

At the hearing of this Motion, Defendant waived its right to any bond acording to Fed.R.Civ.P. 65. The Court therefore finds that the amount of such bond shall be $0.00.

NOW, THEREFORE, IT IS ORDERED that:

(1) the Defendant (including its divisions such as Homelite or Homelite/Jacobsen), its officers, agents, servants, employees, and all other persons acting in concert or participation with it or them be, and hereby are, RESTRAINED from selling or marketing Defendant's "old-design" Model 420 or 420E snowthrowers, those being the snowthrowers which have impellers as shown in Plaintiff's Exhibit 4 to its Motion for preliminary injunction;

(2) this Court's Order of October 27, 1987 is VACATED;

(3) Defendant shall FILE an answer to the Complaint on or before November 13, 1987; and

(4) the parties are DIRECTED to ADVISE the Court as soon as possible of the date after which a hearing on Plaintiff's Motion for preliminary injunction may be held.