CVI/BETA VENTURES, INC., Marchon Eyewear, Inc., Marcolin U.S.A. Inc., and Rothandberg, Inc., Plaintiffs,

v.

CUSTOM OPTICAL FRAMES, INC. and Charles Dahan, Defendants.

Civ. No. PJM 94–760.

United States District Court, D. Maryland.

Aug. 4, 1994.

Francis B. Burch, Jr., Robert J. Mathias, John Caleb Dougherty, Piper & Marbury, Baltimore, MD, James J. Maune, New York City, for plaintiffs.

Jody Maier, Arthur P. Fergenson, Weinberg & Green, Baltimore, MD, Peter D. Olexy, Kenneth J. Burchfiel, Scott M. Daniels, Brett S. Sylvester, Sughrue, Mion, Zinn, Macpeak & Seas, Washington, DC, for defendants.

## *OPINION*

MESSITTE, District Judge.

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order, pursuant to Federal Rule of Civil Procedure 65(b). For reasons that will appear in the course of the ensuing discussion, the Court will treat the motion as one for preliminary injunction, subject to the proviso that the Court will reconsider the matter at a hearing beginning on September 19, 1994.

### I.

This is a patent infringement case. The patents relate to eyeglass frames fabricated from nickel-titanium based (NiTi) shaped memory alloy (SMA) components. Such eyeglass frame components, when work-hardened, exhibit elasticity and are resistant to permanent deformation. Plaintiff CVI/Beta Ventures, Inc. (Beta) holds United States Letters Patent No. 4,772,112 entitled "Eye-glass Frame Including Shape Memory Elements" (the " '112 patent"), as well as Patent No. 4,896,955 entitled "Eyeglass Frame Including Shape Memory Elements" (the " '955 patent"). Plaintiff Marchon Eyewear, Inc. (Marchon) is the exclusive licensee of Plaintiff Beta for importing, marketing and selling in the United States of eyeglass frames falling within the scope of the '112 and '955 patents. Plaintiffs Marcolin U.S.A. Inc. (Marcolin) and Rothandberg, Inc. (Rothandberg) import and distribute the licensed products under the supervision, management and control of Marchon. Under the trademark "Flexon," "Autoflex," and "Accuflex", Marchon and its affiliates have been selling, advertising and promoting the patented frames in the United States since at least 1989.

Defendant Custom Optical Frames, Inc. is a Maryland corporation, of which Defendant Charles Dahan is the President.

Plaintiffs allege that, in or about the Spring of 1994, Custom Optical and Dahan commenced to import, use, offer for sale and sell, under the name "Technoflex," eyeglass frames which incorporate nickel-titanium based shaped memory alloy. These frames, according to Plaintiffs, infringe one or more claims of Beta's patents. Defendants are not alleged to have manufactured the frames, which is in fact accomplished by at least one major Japanese corporation, but are said to serve principally as a conduit through which frames can be sold in the United States.

Further facts relating to the case will be developed in the course of this opinion. The more immediate concern is to clarify the nature of the relief that the Court is asked to grant at this point. The chronological history of the case is particularly relevant in this regard.

### II.

Plaintiffs filed their complaint herein on March 25, 1994. Shortly after suit was filed, Defendants moved to dismiss the complaint under Fed.R.Civ.P. 12(b), on the basis that they had not yet sold any NiTi SMA frames in the United States.

In late April, however, Plaintiffs became aware of actual sales and shipments of NiTi SMA eyeglass frames by Defendants and, on May 3 filed an Amended Complaint. Defendants' sales of NiTi SMA eyeglass frames also caused Plaintiffs to file a motion for a preliminary injunction, which they did on May 10. In that motion, Plaintiffs requested that Defendants be enjoined from making, using or selling Defendants' Technoflex model eyeglass frames prior to trial. Plaintiffs supported their motion with affidavit evidence concerning the infringing character of Defendants' NiTi SMA frames and the irreparable harm to Plaintiffs should injunctive relief not be granted. Plaintiffs also requested an expedited hearing on their motion.

On May 23, Defendants answered the Amended Complaint and withdrew their motion to dismiss. On May 25, they filed motions for a continuance, expedited discovery and to compel the production of documents. By these motions Defendants sought more time to respond to the preliminary injunction motion. On May 26, however, the Court denied those motions and on May 27, Defendants filed their opposition to the preliminary injunction motion. On June 15, with briefing on the preliminary injunction motion complete, the Court set a hearing on the motion for July 14.

Plaintiffs, however, remained concerned that Defendants might make major shipments of NiTi SMA eyeglass frames before the July 14 hearing and on June 23 wrote to Defendants' counsel, asking them to indicate Defendants' plans regarding the distribution of NiTi SMA eyeglass frames in the United States prior to July 14.

On June 27, Defendants' counsel responded by letter, indicating that Defendant Custom Optical "expects to distribute a minimal number of [NiTi SMA] eyeglass frames in the United States during that period."

Meanwhile, on June 24, Defendants had written to the Court seeking a continuance of the July 14 preliminary injunction hearing and requesting that a four day evidentiary hearing be held. Defendants represented to the Court that they needed additional time to conduct discovery of Plaintiffs and of third parties. On June 28, concurring in this request, the Court cancelled the July 14 hearing and scheduled an evidentiary hearing to begin on September 19, 1994.

Plaintiffs' counsel again sought reassurance.

After the September 19 hearing date was set, they immediately contacted defense counsel to ascertain whether Defendants' sales activity between July 14 and September 19 would continue to be "minimal" and whether Defendants would agree to refrain from distributing NiTi SMA eyeglass frames to certain discounters such as Walmart, NVA (National Vision Associates), Eyemart Express or others before completion of the September hearing.

Defense counsel's letter response of July 1 gave Plaintiffs less comfort than hoped for. In it, they refused to give assurances or to continue the earlier representation that Defendants would maintain a "minimal" amount of sales through the completion of the preliminary injunction hearing. Subsequent attempts by Plaintiff's counsel to obtain assurances from Defendants' counsel that the level of Defendants' sales activity preceding the September hearing would remain "minimal" proved similarly unavailing. Plaintiffs thereupon sought an immediate hearing with the Court.

On July 14, the Court held a telephone hearing with counsel to address Plaintiffs' concerns regarding Defendants' interim sales activity. As a result, the Court ordered that Defendants produce Defendant Charles Dahan as a 30(b)(6) witness of Defendant Custom Optical for a telephone deposition to answer questions about Defendants' shipments or orders of NiTi SMA eyeglass frames between July 14 and the September 19 preliminary injunction hearing.

Testimony given by Dahan at his July 21 deposition confirmed that, during the months of April and/or May of 1994, Defendants had in fact taken several orders for NiTi SMA eyeglass frames, including orders from discount retailers such as Walmart, NVA (National Vision Associates), Eyemart Express and others. Those orders called for shipments to take place in August and/or Sep-

tember of 1994. Dahan further specifically testified that:

a) Defendants had ordered approximately 30,000 NiTi SMA eyeglass frames from their Japanese suppliers Kanto Special Steel Works, Ltd. (Kanto) for delivery to Defendants prior to September 19;

b) Defendants expected to receive at least a portion of the 30,000 NiTi SMA frames ordered from Kanto beginning August 1, 1994 and intended to commence shipping such frames immediately upon receipt;

c) Defendants intended to ship approximately 15,000 NiTi SMA frames to Walmart prior to the commencement of the September 19 preliminary injunction hearing;

d) Defendants intended to ship approximately 4,000 NiTi SMA frames to NVA prior to the commencement of the preliminary injunction hearing;

e) Defendants intended to ship approximately 3,000 Niti SMA frames to Nu Vision, a customer of Plaintiff Marchon;

f) Defendants intended to ship at least an additional 3,600 NiTi SMA frames ordered from Japan to other unidentified customers; and

g) Defendants currently had 5,000 NiTi SMA frames in their inventory, which they intended to ship to fill any outstanding orders.

On July 27, in light of what Plaintiffs took to be Defendants' intention to flood the market with infringing eyeglass frames prior to the September 19 hearing, Plaintiffs filed a Motion for Temporary Restraining Order.[1] On July 29, Defendants filed an extensive Opposition to that Motion.[2] The Court immediately set argument on the TRO for August 3, 1994, and on that date heard from counsel for approximately 1½ hours. In addition to the extensive exhibits and affidavits offered in support of the Motion and Opposition for the TRO, the Court had before it similar materials adduced in connection with the Motion and Opposition to the Motion for Preliminary Injunction.

### III.

■ Federal Rule of Civil Procedure 65(b), dealing with temporary restraining orders, is primarily concerned with the entry of *ex parte* orders and is structured to ensure that parties subject to such orders are given an opportunity to present their case as soon as possible. *See Toro Company v. Textron, Inc.*, 703 F.Supp. 417 (W.D.N.C.1987). Since such orders may issue without notice to affected parties, among other protections afforded by the rule is the limited duration of the TRO, *i.e.* it remains in effect for only 10 days or until an adversary hearing is held to determine the propriety of continuing the injunction pendente lite, whichever period is shorter. *See* Fed.R.Civ.P. 65(b); C. Wright and A. Miller, *Federal Practice and Procedure*, § 2951, p. 499 (1973). While a TRO is ordinarily extendable for an additional 10 days for good cause shown, unless the party against whom the order is directed consents, it may not be extended for a longer period. Fed.R.Civ.P. 65(b).

■ On the other hand, as Wright and Miller point out, "(w)hen the opposing party actually receives notice of the application for restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements." *See* C. Wright and A. Miller, *supra.* Where there is a meaningful adversary hearing on the issues raised by the motion, the rules governing a motion for preliminary injunction have been deemed sufficient to protect the parties. Thus Courts have on occasion treated motions for restraining orders as though they were motions for preliminary injunction. *See Toro Company v. Textron, Inc.*, 703 F.Supp. at 418–419. Indeed the *Toro Company* court not only treated a motion for temporary restraining order as a motion for preliminary injunction, but following its ruling went on to set a further hearing on the motion for preliminary injunction that plaintiff had previously filed. This Court adopts the model of the *Toro* court; it will treat the Plaintiffs'

---

1. The Motion also requested an order rescheduling the preliminary injunction hearing.

2. Defendants also opposed the rescheduling of the September 19th hearing.

motion for temporary restraining order as one for preliminary injunction.

Defendants have had notice of this suit since the end of March, 1994, *i.e.* for more than 4 months. In a telephone conversation with the Court, defense counsel initially agreed to a July 14 hearing on the preliminary injunction. Only as that date approached did Defendants ask for a postponement of the hearing in order to conduct further discovery. Plaintiffs concurred, in large part, it appears, because Defendants indicated that they had no intention of pursuing aggressive marketing of their eyeglass frames before the September 19 hearing. It turns out, however, as demonstrated by Defendant Dahan, whose deposition was taken by order of court, that Defendants contemplated a considerably more aggressive marketing program before September 19. The Court also notes that Defendants themselves have been somewhat less than expeditious in producing discovery in this case, refusing to make available to Plaintiffs, until the Court ordered that they be produced, prototypes of their Technoflex frames.

The Court concludes that Defendants have had sufficient notice and opportunity to be heard in the matter, such that the present proceeding may fairly be treated as one for preliminary injunctive relief. That said, however, the Court declares its intention to hold a further hearing to reconsider this matter, beginning on September 19, 1994. *See Toro Company v. Textron, Inc., supra.*

## IV.

In the Fourth Circuit, District Courts must consider in "flexible interplay" four factors in determining whether to grant a preliminary injunction:

1) Plaintiff's likelihood of success on the merits;

2) Whether Plaintiff will suffer irreparable harm if the injunction is not entered;

3) The injury to Defendant if an injunction is issued; and

4) The public interest.

*See Blackwelder Furniture Company v. Seilig Manufacturing Company,* 550 F.2d 189, 193–196 (4th Cir.1977). "The two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree. If that balance is struck in favor of plaintiff, it is enough that grave or serious questions are presented; and plaintiff need not show a likelihood of success." *Id., see also Taxpayers Against Fraud v. Link Flight Simulation,* 722 F.Supp. 1248, 1251 (D.Md.1989). The *Blackwelder* test has been applied in a patent case where injunctive relief was granted. *See Rubbermaid Commercial Products, Inc. v. Contico International Inc.,* 836 F.Supp. 1247 (W.D.Va.1993). The *Blackwelder* test, it may be noted, is essentially consistent with the test that the Federal Circuit applies for injunctive relief. *Id.* at 1256–1257. The Court considers each of these factors in the present case.

### A) *Irreparable Harm and Balance of Hardships.*

■ Plaintiffs have been selling NiTi SMA eyeglass frames since at least 1989. It is clear that they have established a substantial market and reputation as the exclusive United States supplier of such frames under the names Flexon, Autoflex and/or Accuflex.

They have also expended substantial amounts of financial and human resources in establishing this market. In less than five years, they have established yearly sales exceeding forty million dollars. As exclusive licensees of the Beta patents, Plaintiffs are legally entitled to enjoy and protect their market for the patented frames for the entire terms of the Beta patents, absent a finding of invalidity of the patents.

Should Defendants ship patent-infringing NiTi SMA eyeglass frames, there would be a great risk of irreparable damage to Plaintiffs' reputation, business good will, business growth and customer base. This reputation includes a widespread understanding among the retail trade that Marchon holds exclusive rights under the Beta patents to market such frames and that Marchon has a policy of supplying its products only to full service retailers and not to discount stores. Plaintiffs' customers appear to rely on this reputa-

tion and understanding in placing orders with Marchon.

It is thus fair to conclude that irreparable harm to Plaintiffs would occur if Defendants were to ship infringing NiTi SMA eyeglass frames to retail discounters such as Walmart, NVA (National Vision Associates) and Eyemart Express. Those discounters may be expected to offer such frames for sale at substantially reduced prices as compared to the prices currently offered to customers by Plaintiffs' customers. Such action would cause Plaintiffs' retail customer base to be significantly and irreparably harmed.

Affidavit evidence submitted by Plaintiffs in support of their preliminary injunction motion also indicates that they could lose important customers if Defendants are not enjoined. For instance, at the time that the motion was filed, Plaintiffs expressed concern that NuVision would terminate its relationship with Plaintiffs if Defendants' sales were permitted to continue. Since that time, Plaintiffs appear to have lost NuVision as a customer. Defendants, on the other hand, admit that they have taken orders from Nu-Vision.

The Court is accordingly satisfied that Plaintiffs have shown likely irreparable harm if Defendants are not enjoined from shipping significant numbers of the alleged infringing eyeglass frames before a full hearing can be held.

The harm to Defendants, in contrast, appears to be relatively small. Since they admit their participation in the nickel-titanium SMA market has lasted but a few months and since they made no sales prior to April, 1994, a preliminary injunction would only prevent them from shipping the frames prior to the conclusion of a merits hearing. At the same time, Defendants have not satisfied the Court that they would actually breach any contracts if the injunctive relief were granted, the consequences of which, in any case, would seem to be covered by the agreement Defendants have with their Japanese suppliers to indemnify them against any possible patent infringement. On the evidence presented, the balance of hardships in this case weighs in favor of Plaintiffs.

### B) *Plaintiffs' Likelihood of Success on the Merits.*

■ Although *Blackwelder* allows that a showing of likelihood of success is less important if the balance of hardships favors Plaintiffs and grave and serious questions are otherwise presented, Plaintiffs' likelihood of success nonetheless remains a factor to consider. Ordinarily this factor requires a two-part showing, *i.e.* "a patent holder must establish a likelihood of success on the merits both with respect to validity of its patent and with respect to infringement of its patent." *Hybritech Inc. v. Abbott Laboratories,* 849 F.2d 1446 (Fed.Cir.1988). Indeed, it has been held that if the patentee makes a strong showing of validity and infringement, the law presumes irreparable harm. *Id.* at 1456.

Certainly Plaintiffs' patents are entitled to a presumption of validity under 35 U.S.C. § 282. The fact that the validity of the most recently issued patent, the '955 patent, was confirmed by the Patent and Trademark Officer during a 1991 reexamination proceeding, particularly to the extent prior art was considered, is another factor militating favor of Plaintiffs' likelihood of success on the issue of validity. *See E.I. du Pont de Nemours v. Polaroid Graphics,* 706 F.Supp. 1135, 1141 (D.Del.1989).

Defendants have challenged the validity of the Beta patents, but have only raised several possible bases of invalidity and unenforceability. Indeed, Defendants themselves admit that they need further discovery to explore the basis for any challenge to the validity or enforceability of the Beta patents. Under the circumstances, the Court concludes that Plaintiffs' evidence as to validity preponderates.

Plaintiffs also bear the burden of showing that Defendants' infringement is likely to have occurred. To this effect, Plaintiffs have submitted evidence, including an affidavit of Professor Daniel N. Beshers, a professor of metallurgy at Columbia University, which raises serious questions as to Defendants' potential infringement of the Beta patents. Professor Beshers designed and supervised a series of mechanical and chemical tests on selected components of Defendants' Techno-

flex eyeglass frames to determine the chemical composition and physical properties of those components as they related to the features and property set forth in Claim 1 of the '955 patent. He found that a portion of Defendants' eyeglass frame:

a) Was fabricated from nickel-titanium based shaped memory alloy comparable to what was used in the '955 patent;

b) Exhibited stress-strain characteristics representative of the work-hardened pseudoelastic metallurgical state as defined in the '955 patent;

c) Had a similar, low effective elastic modulus giving a soft springy feel; and

d) Had comparable greater than 3% elasticity over a given temperature range from $-20°$ c. to $+40°$ c.

These tests, while not conclusive, do tend to show that Defendants' Technoflex frame model infringes the Beta products. In contrast, none of the evidence adduced by Defendants at this stage gives the Court reason to reject Professor Beshers' analysis as invalid.

### C) *The Public Interest.*

The Court notes, on the one hand, the public interest in innovation as expressed in the nation's patent infringement and unfair competition laws and the ability of Defendants to match Plaintiffs' product without incurring anywhere near the costs that Plaintiffs have spent in research, development and marketing of its products. *See Rubbermaid Commercial Products, Inc. v. Contico International Inc.*, 836 F.Supp. at 1262–1263. On the other hand, it is obvious that public policy favors free competition. While the question is close, Defendants concede that they were well aware of Plaintiffs' patents and labored to "work around them." Whether they have in fact successfully done so remains to be determined at a merits hearing. At this stage, taking all other factors into account as well, the Court finds that the public policy scales tip in favor of protecting patent rights.

### V.

Inasmuch as Plaintiffs have satisfied the *Blackwelder* factors, the Court concludes that they are entitled to a preliminary injunction. At the same time, as the Court indicated at the outset, it remains disposed to reconsider this ruling should Defendants be able to develop appropriately persuasive evidence in the course of further discovery. The Court, therefore, will entertain a motion to reconsider this ruling, with the hearing on such motion to be held on September 19, 1994 and thereafter.

A separate Order will be entered implementing this decision.

### ORDER

Upon consideration of Plaintiffs' Motion for Temporary Restraining Order and/or for an Order Rescheduling the Preliminary Injunction Hearing, and Defendants' Opposition thereto, counsel's argument thereon, as well as the entire record in this case, it is, for the reasons set forth in the accompanying Opinion, this 4th day of August, 1994

ORDERED that said motion shall be treated as one for preliminary injunction; and it is further

ORDERED that, from August 4, 1994 until further ruling of the Court, Defendants are enjoined from:

A) Shipping or distributing nickel titanium based shape memory alloy (NiTi SMA) eyeglass frames to Walmart, NVA (National Vision Associates), Eyemart Express, NuVision or any entities affiliated with or related to any of these companies; and

B) Making any shipments or filling any orders for more than 100 NiTi SMA frames to any one person, company or entity; and it is further

ORDERED that pursuant to Fed.R.Civ.P. 65(c), Plaintiffs shall post a bond with the Clerk of Court in the amount of $25,000 for the payment of damages that may be incurred if Defendants are later found to have been wrongfully enjoined; and it is further

ORDERED that the Court will hold a hearing to reconsider this injunction on Sep-

tember 19, 1994, and for up to three court days thereafter.