**DREXELBROOK CONTROLS, INC., Plaintiff,**

v.

**MAGNETROL INTERNATIONAL, INC., Defendant.**

**Civ. A. No. 89–132–CMW.**

United States District Court, D. Delaware.

Aug. 30, 1989.

William O. LaMotte, III, and Donald F. Parsons, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. Norman L. Norris, and Jeffrey M. Navon, of Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Philadelphia, Pa., of counsel, for plaintiff.

Vernon R. Proctor, and Michael Bonkowski, of Phillips, Lytle, Hitchcock, Blaine & Huber, Wilmington, Del. Lloyd W. Mason, Richard S. Phillips, and F. William McLaughlin, of Wood, Dalton, Phillips, Mason & Rowe, Chicago, Ill., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This is a patent infringement suit in which plaintiff, Drexelbrook Controls, Inc. ("Drexelbrook"), seeks a preliminary injunction against defendant, Magnetrol International, Inc. ("Magnetrol"). Drexelbrook charges Magnetrol with infringement of Drexelbrook's United States Patent No. 4,146,834 (the "'834 patent"), which is directed to a two-wire, electronic transmitter system used in measuring the condition of materials. Specifically, Drexelbrook requests the Court to "enjoin Magnetrol from making, using or selling [KOTRON] two-wire transmitters and equivalent two-wire admittance monitoring transmitters."

Drexelbrook filed suit on March 21, 1989. It moved for a preliminary injunction on May 5, 1989, and briefing on the motion was completed June 28, 1989. The Court heard oral argument on July 7, 1989.

The Court has jurisdiction pursuant to 28 U.S.C. § 1338(a). For the reasons stated herein, plaintiff's motion is denied.

## I. FACTS

Drexelbrook, a Pennsylvania corporation, was founded in 1966 by its president, Frederick L. Maltby. Drexelbrook filed a patent application on September 19, 1974, directed to a two-wire transmitter comprising an admittance monitoring circuit. An admittance monitoring system measures a dynamic electrical characteristic (the admittance) of a material and uses that characteristic to indicate the condition of a material.[1] Such a system can be used to measure the level of a liquid, such as oil, or a granular solid, such as grain, by electrically sensing the admittance between a probe electrode immersed in the material and a grounded vessel containing the material.[2] Prior to the issuance of Drexelbrook's application as U.S. Patent No. 3,993,947 (the " '947 patent"), a continuation-in-part application was filed on November 22, 1976, which ultimately issued on March 27, 1979, as the '834 patent. The '834 patent is entitled "Admittance Measuring System for Monitoring the Condition of Materials."

The '834 patent includes thirty-five claims directed to various features of a two-wire transmitter system comprising the admittance monitoring circuit. As recited in claim 1 of the '834 patent, the two-wire transmitter system comprises an admittance sensing probe including a probe electrode that is adapted to sense the condition and corresponding admittance of materials. '834 Patent at column 26, lines 64–66. An admittance responsive network

coupled to the probe represents the condition of the materials, and output means coupled to the admittance responsive network varies the signaling current in response to the condition of the materials. *Id.* at column 26, lines 67–68; column 27, lines 1–3.

Drexelbrook employs the subject matter of the '834 patent in its Universal Level Transmitter product line. This product line includes various two-wire transmitter models for admittance monitoring of conducting liquids, conducting slurries, interface levels and granular materials. The advantages of the system covered by the '834 patent include high reliability and low power requirements, which make it suitable for use in explosive or hazardous environments.

Drexelbrook has a number of competitors in the admittance monitoring product field. These include, but are not limited to, Princo Instruments, Inc. ("Princo") and defendant, Magnetrol. Magnetrol manufactures and sells the KOTRON Two–Wire Level Transmitter. This device includes a probe and transmitter circuitry, but does not include a load (power output), power supply or transmission line wires.[3]

## II. ANALYSIS

The patent laws authorize this Court to grant a preliminary injunction in a patent case, and make the issuance of an injunction discretionary. 35 U.S.C. § 283; *T.J. Smith & Nephew Ltd. v. Consol. Medical Equipment, Inc.,* 821 F.2d 646, 646 (Fed. Cir.1987). "The district court's discretion is not absolute, however, and must be measured against the standards governing the issuance of injunctions." *Smith Int'l., Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1579 (Fed.Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983).

---

**1.** Admittance is an electrical characteristic that combines capacitance and resistance. It is the ratio of a voltage to a current, and is measured in mhos. *American Heritage Dictionary* 17 (new college ed. 1976). Capacitance is the ratio of charge to potential on an electrically charged, isolated conductor. *Id.* at 199. Resistance is the opposition offered by a substance or circuit to the passage of electric current. *Id.* at 1106.

**2.** The resistance between the probe electrode and the grounded vessel is the "shunt resistance."

**3.** *See* Defendant's Appendix 6 ("D.App."). For a further discussion of Magnetrol's KOTRON Two–Wire Level Transmitter, see *infra* at 20.

To obtain a preliminary injunction in a patent infringement action pursuant to 35 U.S.C. § 283, a party must establish a right thereto in light of four factors: (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) the balance of hardships tipping in its favor; and (4) the impact of the injunction on the public interest. *P.W. Woo & Sons, Inc. v. Antelope Enterprise Co. Ltd.*, 871 F.2d 1096, 10 U.S.P. Q.2d 1876, 1877 (Fed.Cir.1989); *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 (Fed.Cir.1988); *Consolidated Medical*, 821 F.2d at 647. None of these factors, taken individually, are dispositive; rather, the court "must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Hybritech*, 849 F.2d at 1451.

█ If a patent holder makes a "clear showing" of both validity and infringement, the Court may presume irreparable harm. *Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266, 1271 (Fed.Cir.1985); *Smith Int'l.*, 718 F.2d at 1581. If the patentee does not make such a "clear showing", but can establish only a reasonable likelihood of success on the merits, then he also must make a separate showing of irreparable injury. *Roper*, 757 F.2d at 1272 n. 5; *Upjohn Co. v. Riahom Corp.*, 641 F.Supp. 1209, 1217 (D.Del.1986).

### A. *Reasonable Likelihood of Success on the Merits*

Thus, for Drexelbrook to succeed on its motion it must show a reasonable likelihood of success on the merits. To do so, Drexelbrook must show that there is a reasonable likelihood that at trial Magnetrol will not prevail on the invalidity and non-infringement defenses that it has advanced. More specifically, Drexelbrook has to show by a preponderance of the evidence both that Magnetrol will fail to meet its burden of proving, by clear and convincing evidence, that the '834 patent claims are invalid because of obviousness, and that Magnetrol infringes the '834 patent. *See E.I. du Pont de Nemours & Co. v. Polaroid Graphics*

*Imaging, Inc.*, 706 F.Supp. 1135, 1140 (D.Del.1989).

### 1. *Validity*

█ A patent is presumed valid, and each claim of a patent is presumed valid independent of the validity of the other claims. 35 U.S.C. § 282. This presumption is procedural, not substantive. *Consolidated Medical*, 821 F.2d at 648. The burden is on the party claiming invalidity to prove by clear and convincing evidence that the patent is invalid. 35 U.S.C. § 282; *Polaroid*, 706 F.Supp. at 1141. However, on a motion for preliminary injunction, the burden is on plaintiff to show a reasonable likelihood that the attack on its patent's validity would fail. *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 387 (Fed.Cir.1987); *John Fluke Mfg. Co. v. North American Soar Corp.*, 5 U.S.P.Q.2d 1657, 1659, 1987 WL 46372 (D.N.J.1987).

A patent holder seeking a preliminary injunction can make a sufficient showing of patent validity in three ways: (1) a prior adjudication of the validity of the patent; (2) public acquiescence to its validity; or (3) direct technical evidence proving its validity. *Smith Int'l.*, 718 F.2d at 1578; *Upjohn*, 641 F.Supp. at 1218. Because the validity of each of the patent's claims must be separately and independently considered, a plaintiff need only show a reasonable likelihood that one claim is valid in order for an injunction to be granted. *Pittway v. Black & Decker*, 667 F.Supp. 585, 588 (N.D.Ill.1987) (citing *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1569–72 (Fed.Cir.1986)).

Drexelbrook admits that there has been no adjudication of the validity of the '834 patent. However, there has been prior litigation regarding the patent. In 1988, Drexelbrook filed suit against Princo charging that Princo was infringing claims of both the '834 and '947 patents by making, using and selling a two-wire transmitter system comprising an admittance monitoring circuit. Drexelbrook filed a motion for a preliminary injunction. Before the court had an opportunity to consider Drexelbrook's motion, Princo entered into a con-

sent judgment with Drexelbrook. In the consent judgment, Princo acquiesced to the validity of the '834 patent by conceding that all claims of the patent were valid and that the claims of the patent were infringed by Princo. The consent judgment further enjoined Princo from infringing any claims of the '834 patent.

Drexelbrook asserts that the consent judgment "evidences public acquiescence in the validity of the '834 patent." Plaintiff's Brief at 13 ("P.Br."). Magnetrol calls this "pure speculation." Defendant's Brief at 10 ("D.Br."). While evidence of acquiescence by the industry to the patent owner's rights has long been accepted by the courts as providing partial or even total support for the probable validity of the patent, the necessary degree of acquiescence is dependent upon the particular circumstances. *See* 5 D. Chisum, *Patents* § 20.04[1], at 20–281–84 ("*Chisum*"). As a general matter, the public acquiescence needed to sustain validity must be long-standing. *Upjohn*, 641 F.Supp. at 1218. Also, acquiescence ceases to be probative of probable validity if the evidence suggests that such acquiescence was caused by factors other than belief by the industry in the validity of the patent. *Chisum* § 20.04[1], at 20–285.

Given these standards, the consent judgment with Princo is at best only non-dispositive evidence going to the validity of the '834 patent. The '834 patent issued ten years ago, and Drexelbrook and Princo entered into the consent judgment in 1988. Additionally, there is no evidence as to why Princo entered into the consent judgment. The Court, not unfamiliar with patent litigation, can only speculate as to Princo's motives, and is therefore chary of drawing inferences from the settlement.

Drexelbrook's chief argument in favor of the validity of the '834 patent is that direct technical evidence shows that it has met the statutory requirements for patentabili-

ty. It makes this argument in response to Magnetrol's assertion that the subject matter of claim 1 of the '834 patent would have been obvious at the time of invention to a person of ordinary skill in the art, and that the claim therefore does not satisfy the nonobviousness requirement of 35 U.S.C. § 103.[4]

"The nature of the inquiry to be made and the factors to be considered in determining whether a patent was obvious are [now] well established...." *Jenn–Air Corp. v. Modern Maid Co.*, 499 F.Supp. 320, 327 (D.Del.1980), *aff'd*, 659 F.2d 1068 (3d Cir.1981). Obviousness is a question of law based upon the factual inquiries enunciated in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The Supreme Court in *Graham* stated:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.... Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness, these inquiries have relevancy.

383 U.S. at 17–18, 86 S.Ct. at 694. Additionally, "[o]bviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teachings or suggestion supporting the combination." *ACS Hospital Systems, Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1577 (Fed.Cir.1984). Therefore, an invention is not unpatentable as obvious merely because it is a combination of prior art elements. *See Fluke Mfg.*, 5 U.S.P. Q.2d at 1662.

To demonstrate the scope and content of the prior art, Magnetrol cites one publica-

---

4. The statute states in relevant part:
  A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are

such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.
35 U.S.C. § 103.

tion and six patents purportedly not considered by the Examiner (the "new references"),[5] two prior Drexelbrook patents (cited in the '834 specification)[6] and U.S. Patent No. 3,648,165 ("Shawhan patent").[7] Magnetrol asserts that these items "show two-wire transmitter systems with capacitive, resistive and inductive elements which sense a condition, each having a network which responds to the sensed condition and each having an output means which varies the signaling current in response to the condition." D.Br. at 8. Magnetrol argues that both the sensing probe and the two-wire system of claim 1 of the '834 patent are suggested (are "old") by the prior art.

In response to Magnetrol's argument of obviousness, Drexelbrook submitted an affidavit of Thomas W. Moore, an associate professor of electrical engineering at Drexel University ("Moore Aff. I"). Moore, after a study of the '834 patent and the prior art cited by Magnetrol, concludes that "the subject matter of claim 1 would not have been obvious ... since it would not have been obvious to combine prior art admittance sensing probes with prior art two-wire transmitter systems." Moore Aff. I at 2.

■ Implicit in Professor Moore's conclusion is the assumption that the prior art contained admittance sensing probes and two-wire transmitter systems.[8] The crux of Drexelbrook's argument on obviousness is therefore that the prior-art references do not disclose or suggest the *combination* (of two-wire system with admittance sensing probe) covered by claim 1 of the '834 patent, and that it would not have been obvious to combine those elements. *See* Reply Br. at 7. For a patent to be obvious based upon a combination of elements in the prior art, something in the prior art as a whole must suggest the desirability of the combination. *See Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1051 (Fed.Cir.1988); *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.,* 730 F.2d 1452, 1462 (Fed.Cir.1984). The dispositive question on the validity of claim 1 of the '834 patent is, then, whether the totality of prior art would render obvious the combination of an admittance sensing probe with a two-wire system.[9]

The Court is not prepared to definitively answer this question on the record before it. Despite Professor Moore's determina-

---

5. The publication cited by Magnetrol is Marsh, "Two–Frequency Oscillator Detects Level of Liquid", *Electronics,* March 20, 1967, at 90. D.App. 3(a). The six patent references are as follows: U.S. Patent No. 3,646,538 ("Frick patent") (D.App. 3(b)); U.S. Patent No. 3,051,932 ("Cressey patent") (D.App. 3(c)); U.S. Patent No. 3,675,122 ("Rose patent") (D.App. 3(d)); U.S. Patent No. 3,786,345 ("Mikkelsen patent") (D.App. 3(e)); U.S. Patent No. 3,683,344 ("Saito patent") (D.App. 3(f)); U.S. Patent No. 3,680,384 ("Grindheim patent") (D.App. 3(g)).

6. These two patents, both of which were assigned to Drexelbrook, are U.S. Patent No. 3,781,672 (the " '672 patent") and U.S. Patent No. 3,706,980 (the " '980 patent"). They are referred to collectively here as the "Maltby patents."

7. The Shawhan patent was cited by the Examiner and overcome during the prosecution history. It shows a five-wire, continuous capacitive level measuring system. D.App. 2(c). The Examiner initially rejected claim 1 of the '834 patent as obvious in light of the Shawhan patent, but the '834 applicant overcame this rejection by noting the differences between the two-wire and five-wire systems.

8. Drexelbrook admits as much. It states that the two prior-art Maltby patents and the Shawhan patent claim admittance sensing probes similar to that claimed in the '834 patent. Reply Br. at 9. Also, Drexelbrook does not dispute that, except for the Marsh publication, each of the new references cited by Magnetrol disclose a two-wire transmitter system. *Id.* at 7.

Drexelbrook argues that the the Maltby patents are distinguishable in that they disclose admittance responsive circuitry coupled to an admittance sensing probe at the *same* location as the power supply and load, as opposed to another location, as disclosed in the '834 patent.

9. The Court is cognizant of the Federal Circuit's admonition against using hindsight to reconstruct the claimed invention from prior art in light of the invention before the court and the testimony of experts. *See Uniroyal,* 837 F.2d at 1051. "The invention must be viewed not with the blueprint drawn by the inventor, but in the state of the art that existed at the time...." *Id.* at 1050–51 (quoting *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1138 (Fed.Cir.1985)).

tion of obviousness, the facts are insufficiently developed at this point to enable the Court to make any type of reasoned determination. This is so because the evidence introduced by Magnetrol creates a sufficient question as to whether there is any teaching or suggestion in any of the references, or in the prior art as a whole, that would lead one with ordinary skill in the art to make the combination.

That does not end the analysis, though. The objective evidence of nonobviousness, i.e., the "indicia" of *Graham,* should, when present, always be considered as an integral part of the analysis. *Uniroyal,* 837 F.2d at 1053; *W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1555 (Fed.Cir. 1983).

The first of these indicia is commercial success. Drexelbrook has experienced substantial commercial success with its admittance monitoring control systems. Drexelbrook has the largest share of the U.S. market among companies supplying two-wire admittance monitoring systems. D.App. 4, at 3. Its total sales of admittance monitoring control systems were more than six million dollars in fiscal year 1979–80, and were in excess of nineteen million dollars for fiscal year 1988–89. P.App. at 171–72. Since the issuance of the '834 patent in 1979, sales of Drexelbrook's two-wire systems covered by the '834 patent have substantially increased. *Id.* at 172–73.

As to long-felt need, what was allegedly needed in the art prior to the invention claimed in the '834 patent was a two-wire transmitter system capable of monitoring the admittance of a material at a remote location. The inventors of the '834 patent initially believed admittance monitoring required higher power than was available to a two-wire transmitter. They assumed that in many cases "the [shunt] resistance in parallel with the capacitance between the probe electrode and [the] grounded vessel" would draw off all or nearly all of the four to twenty milliamp current typically available in a two-wire transmitter, leaving little or no power to operate the circuitry. However, their experiments demonstrated that the power consumed by the shunt resistance and the admittance monitoring system was substantially less than originally believed. The inventors concluded that the current available to power a two-wire transmitter was sufficient in all applications that would be realistically encountered. P.App. at 164–66 (affidavit of Frederick L. Maltby).

Further evidence of need is the fact that Magnetrol had customers request two-wire transmitters, which were not at the time part of the KOTRON line. Specifically, customers asked whether Magnetrol had "something like an Endress–Hauser or Princo or Drexelbrook?" P.App. at 372.

Also indicative of the need for such two-wire admittance monitoring devices, and the commercial success of these devices, is the fact that an increase in sales of Magnetrol's KOTRON two-wire transmitters has corresponded with a decrease in the sale of four-wire transmitters. D.App. 5, at 47–49. Today, about seventy percent of Magnetrol's sales of admittance monitoring transmitters are in two-wire transmitters. P.App. at 383. In other words, sales of two-wire transmitters have gradually supplanted sales of four-wire transmitters.

It is well established that the failure of others to provide a feasible solution to a long-standing problem is probative of nonobviousness. *Uniroyal,* 837 F.2d at 1054. This factor is very much related to long-felt need. As explained above, the inventors of the '834 patent seemingly overcame skepticism in the industry as to the feasibility of two-wire, low-power remote transmitters. While "failure" may be too strong a word to describe competitors' efforts here, it does appear that the '834 patent inventors achieved a new level of success with two-wire admittance monitoring systems, and that other companies followed Drexelbrook's lead. It is not entirely clear on this record, though, the extent to which there was a "problem" that was solved by the invention claimed in the '834 patent. This is so because the chief evidence of long-felt need (and long-standing problem) is contained in the affidavit of Frederick L. Maltby, one of the inventors of the '834 patent

and obviously an interested party. Additionally, there is no evidence contemporaneous with the time of the invention (such as a trade journal article) indicating that the invention claimed in the '834 patent provided a novel solution to a long-felt problem.

These secondary considerations of nonobviousness support Drexelbrook's contention that the '834 patent is valid, but they are not themselves sufficiently persuasive on these facts. If the patented combination of elements was obvious in the prior art, then the secondary considerations would not necessarily save the '834 patent. *See Fromson v. Advance Offset Plate, Inc.,* 755 F.2d 1549, 1557 (Fed.Cir.1985).

Magnetrol next argues on the issue of validity that the '834 patent is anticipated by U.S. Patent No. 2,785,374 (the "Fay patent").[10] An invention is anticipated (*i.e.,* lacks novelty) only if each element of the claimed invention is disclosed in a single prior art reference. *Polaroid,* 706 F.Supp. at 1141; 1 E. Lipscomb III, *Lipscomb's Walker on Patents* § 4:4, at 270 (2d ed. 1985). Anticipation exists only when "all of the same elements are found in exactly the same situation and united in the same way ... in a single prior art reference." *Perkin–Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 894 (Fed.Cir. 1984). Anticipation is thus a narrow, technical defense that should be strictly applied. *Studiengesellschaft Kohle mbH v. Dart Industries, Inc.,* 549 F.Supp. 716, 723 (D.Del.1982), *aff'd,* 726 F.2d 724 (Fed.Cir. 1984).

To counter Magnetrol's argument that the Fay patent anticipates the '834 patent, Drexelbrook introduced a second affidavit by Moore ("Moore Aff. II"). In that affidavit, Moore concludes that the Fay patent "does not anticipate claim 1 of the '834 patent nor does it taken alone or in combination with the other prior art references discussed in my earlier affidavit, render claim 1 ... obvious...." Moore Aff. II at 1.

The Fay patent, entitled "System for Analyzing the Composition of Fluid Mixtures," is directed to a system for detecting a small quantity of one fluid in a large volume of another fluid, such as a trace level of oil in water, or vice versa. Fay Patent at column 1, lines 15–25. The system comprises a housing that is adapted to be lowered into a borehole on a conductor cable. *Id.* at column 5, lines 36–38. A small amount of fluid enters the housing and comes in contact with a capacitator whose sheathed plates are mounted therein. *Id.* at column 5, lines 39–40. When the capacitator plates are energized, the device measures the electrical characteristic of the fluid. *Id.* at column 1, lines 60–70.

Professor Moore states that the Fay patent is distinguishable from the '834 patent in that the Fay patent discloses a capacitance sensing probe but not an admittance sensing probe. Moore Aff. II at 2. Additionally, he states that the Fay patent does not disclose a two-wire transmitter, wherein the sole source of power for the transmitter is supplied by the DC signaling current flowing through the transmission lines. *Id.* Rather, the Fay patent discloses one or more conductors that supply a DC powering current and carry an AC signaling current. *Id.*

At oral argument, Magnetrol's counsel argued that Professor Moore's differentiation of the '834 patent from the Fay patent was based on a characteristic of the '834 patent that is not part of claim 1 of the '834 patent. Transcript at 37–38 ("Tr."). Counsel did not, however, further specify to which particular characteristic he was referring. Regardless, upon application of the above-described "strict identity" test of anticipation, *see* 1 *Chisum* § 3.02, at 3–6, it cannot be said that the Fay patent anticipates claim 1 of the '834 patent.

Claim 1 of the '834 patent comprises a two-wire admittance monitoring system that operates on DC current and measures level change in a liquid or granular solid.

10. The Court first learned of this assertion at oral argument, when defense counsel made the Fay patent part of the record. Counsel for Magnetrol had informed counsel for Drexelbrook that Magnetrol would make this assertion, thus allowing Professor Moore time to prepare his affidavit on the issue of anticipation.

Conversely, the Fay patent discloses a capacitance sensing probe and system that operates on both AC and DC current, and is used to analyze the composition (not level) of fluids. There is not present here the type of literal correspondence necessary to support a finding of anticipation. Magnetrol has failed to prove anticipation—more correctly, Drexelbrook has shown a reasonable likelihood of success on the anticipation issue.

However, as in *Upjohn,* the Court declines, at this preliminary stage, to make a finding that the '834 patent meets all the statutory requirements for patentability. Claim 1 of the '834 patent is very broad. P.App. at 388. Plaintiff filed this suit only five months ago, and the record is sparsely developed as to the content of the prior art and other considerations of validity. Indeed, Magnetrol has not yet completed its study of the prior art, and further investigation may well reveal vital prior art patents that will clarify the obviousness issue. *See* Tr. at 52–53. Based upon the parties' briefs and accompanying appendices and short, albeit informative, oral argument, the Court simply does not have an adequate factual record upon which to base any findings.[11]

The Court reaffirms its prior holding in *Upjohn* that it does not believe preliminary injunctive relief is proper when the patent holder cannot dispel sufficiently any doubts as to the validity of the patent. *See* 641 F.Supp. at 1218 n. 11. The existence of such doubts here indicates that Drexelbrook has not shown that Magnetrol will fail to prove by clear and convincing evidence that any claims of the '834 patent are invalid.[12] The Court's conclusion on the

validity issue does not end the analysis on this motion for a preliminary injunction, however. The Court must also consider the remaining requirements that Drexelbrook must satisfy to support injunctive relief. *See Upjohn,* 641 F.Supp. at 1219.

### 2. Infringement

■ Determination of infringement involves three steps: (1) interpreting the language of the patent claims; (2) assessing the nature of the accused infringer's acts; and (3) applying the claims as construed to those acts. 5 D. Chisum, *Patents* § 20.04[1][d], at 20–288 (1988); *Upjohn,* 641 F.Supp. at 1219. It is axiomatic that the parameters of a patent right are defined by the claims of the patent, and that if the accused matter falls within the claims, literal infringement is made out. *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097 (1950); *Smith Int'l.,* 718 F.2d at 1579 n. 2.

Plaintiff's motion for a preliminary injunction is based on a charge of infringement of claim 1 of the '834 patent. As summarized above, claim 1 is directed to a two-wire transmitter system comprising a power supply and a load at one location and a two-wire transmitter at another location, interconnected by a pair of transmission lines carrying a variable signaling current. '834 Patent at column 26, lines 59–63. The improvement is said to comprise: (1) an admittance sensing probe including a probe electrode adapted to sense the condition and corresponding admittance of materials; (2) an admittance responsive network coupled to the probe to represent the condition of materials; and (3) output means

---

11. That is not to say that the Court requires a "final adjudication," "full trial" or proof "beyond question" on the issue of validity to support the issuance of a preliminary injunction. The Court is cognizant that it is considering a request for *preliminary,* not permanent, relief. *See Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 1233 (Fed.Cir.1985).

  Nevertheless, something more than what is present in the record here is necessary to support a preliminary injunction. "The presumption of validity is too slim a reed" upon which to support a finding of validity. *Mayview Corp. v.*

*Rodstein,* 480 F.2d 714, 718 (9th Cir.1973); *Jenn–Air Corp. v. Modern Maid Co.,* 499 F.Supp. 320, 323 (D.Del.1980). Drexelbrook has not carried its burden of producing sufficient independent evidence of validity.

12. This holding should *not* be construed as a finding of invalidity of the '834 patent by the Court. Substantive issues, such as validity and infringement, are not raised for final resolution by motions for preliminary injunctions. *Consolidated Medical,* 821 F.2d at 647 (quoting *Roper,* 757 F.2d at 1271)).

coupled to the admittance responsive network for varying the signaling current in response to the condition of materials. *Id.* at column 26, lines 64–68; column 27, lines 1–3.

Magnetrol's KOTRON Two–Wire Level Transmitter comprises a probe electrode adapted to sense the condition and corresponding admittance of materials, an admittance responsive network coupled to the probe to represent the condition of materials and an output circuit for varying the signaling current in response to the condition of materials. The transmitter is used in conjunction with a twenty-four volt DC (direct current) power source and a load at one location and the remote transmitter at another location. The two are interconnected by a pair of wires carrying an output of four to twenty milliamps.[13] *See* D.App. 6.

In support of its assertion that Magnetrol's transmitter literally satisfies every limitation of at least claim 1 of the '834 patent, Drexelbrook submitted an affidavit of David Little, Drexelbrook's senior development engineer ("Little Aff."). The affidavit contains a chart purporting to show the literal correspondence of claim 1 of the '834 patent with the Magnetrol transmitter. Little Aff. at 2.

Magnetrol offered no substantive evidence to rebut Drexelbrook's argument of literal infringement. Instead, Magnetrol asserts that each element of claim 1 of the '834 patent is not literally present in Magnetrol's transmitter because the Magnetrol transmitter does not itself include a power supply, load or transmission line wires.

Drexelbrook responds by arguing that the Magnetrol transmitter is actually a component part sold by Magnetrol along with other parts (such as the power supply, load and transmission wires) that are connected to form two-wire transmitter systems that infringe claim 1 of the '834 patent. Drexelbrook further asserts that the sensing probes in the KOTRON transmitter are identical to the admittance sensing probes called for in claim 1 of the '834 patent. Therefore, Drexelbrook concludes, Magnetrol is directly infringing the '834 patent by making, using and selling two-wire transmitter systems that infringe claim 1, and is at least contributorily infringing or inducing others to infringe by selling the transmitter itself.

■ Drexelbrook's argument is grounded in 35 U.S.C. § 271,[14] which makes an infringer potentially liable for direct infringement, inducement to infringe or contributory infringement. Contributory infringement cannot exist in the absence of a showing of direct infringement. *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 345, 81 S.Ct. 599, 604, 5 L.Ed.2d 592 (1961) (*Aro I*); *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.,* 803 F.2d 1170, 1173 (Fed.Cir.1986). Magnetrol has offered no evidence, nor suggested the existence of any evidence, to rebut Drexelbrook's showing of direct infringement. Evidence adduced in discovery shows that Magnetrol has apparently sold infringing two-wire transmitter systems. P.App. at 196–200, 236–334 (showing sale by Magnetrol through its representatives to E.I. du Pont de Nemours & Co. of parts that aggregate two-wire admittance monitoring systems). It appears that

13. A milliamp is one-thousandth of an ampere, a standard unit for measurement of electric current. *American Heritage Dictionary* 44 (new college ed. 1976).

14. The statute states in pertinent part:
(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.
(b) Whoever actively induces infringement of a patent shall be liable as an infringer.
(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.
35 U.S.C. § 271.

Magnetrol has thus directly infringed claim 1 of the '834 patent.

■ To establish contributory infringement under 35 U.S.C. § 271(c), one must establish that an alleged contributory infringer knew that the combination for which his components were especially made was both patented and infringing. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488–91, 84 S.Ct. 1526, 1533–35, 12 L.Ed.2d 457 (1964) (*Aro II*); *Preemption Devices*, 803 F.2d at 1174. The intended meaning of "knowing" under section 271(c) is not entirely clear. *See* 4 *Chisum* § 17.03[2], at 17–38.1–40. The knowledge requirement does not include legal conclusions as to the validity and scope of the patent. *Nordberg Mfg. Co. v. Jackson Vibrators, Inc.*, 153 U.S.P.Q. 777, 784 (N.D.Ill.1967), *rev'd on other grounds*, 393 F.2d 192 (7th Cir.1968). It seems likely that Drexelbrook will be able to establish the requisite knowledge on the part of Magnetrol. Since 1980, all Universal two-wire transmitters sold by Drexelbrook have been marked with the '834 patent number. P.App. at 174. Magnetrol used Drexelbrook's specifications in designing the KO-TRON two-wire transmitter. P.App. at 359–364. Prior to developing its KOTRON two-wire transmitter, Magnetrol had customers ask for two-wire transmitters like those produced by Drexelbrook. P.App. at 372. There is thus a strong case that Magnetrol was well aware of the similarity between its product and the system covered by the '834 patent.

The statute further requires a showing that a component especially made or adapted for use in the patented combination is not a staple article suitable for substantial noninfringing use. *Aro II*, 377 U.S. at 485–88, 84 S.Ct. at 1531–33; *Preemption Devices*, 803 F.2d at 1174. There is evidence that the Magnetrol KOTRON transmitter has no practical use other than as part of this infringing system. P.App. at 370–71. The transmitter is, then, a non-staple article. The Court thus finds it probable that Drexelbrook will succeed in proving that the Magnetrol transmitter has been sold for use in an infringing system.

Drexelbrook also has a reasonable likelihood of success on the merits of its argument as to inducement under section 271(b). Sections 271(b) and 271(c) are closely related. 4 *Chisum* § 17.04[3], at 17–46–48 ("complementary provisions"). Although section 271(b) does not contain the word "knowing," the case law and legislative history uniformly assert this requirement. *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed.Cir. 1988). While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice. *Id.* The requisite intent may be inferred from all the circumstances. *Id.* at 669.

The circumstances here support such an inference. As noted above, Magnetrol's KOTRON two-wire transmitter has no practical use other than as part of a system. Magnetrol intends that the transmitter be installed in admittance-monitoring, two-wire systems. P.App. at 371, 390. Moreover, it sells the power supply, probe and load accessories for use in conjunction with the transmitter. *Id.* at 391–93. This creates at least a reasonable likelihood that Drexelbrook will be able to prove inducement to infringe.

In light of Magnetrol's failure to rebut Drexelbrook's evidence of infringement, the Court concludes that Drexelbrook has made a sufficient showing of likely success on the issue of infringement.

### B. *Irreparable Harm*

Drexelbrook has not shown that Magnetrol will fail to prove by clear and convincing evidence that any claims of the '834 patent are invalid. The Court therefore cannot presume irreparable harm, and Drexelbrook must make an independent showing of irreparable injury. *See Smith Int'l.*, 718 F.2d at 1580–81; *Fluke Mfg.*, 5 U.S.P.Q.2d at 1662.

Drexelbrook has not asserted that Magnetrol is financially unreliable and cannot respond in damages. While Magnetrol's apparent ability to compensate Drexelbrook for any future infringement is a factor weighing against an injunction, it is not dispositive. *See Roper*, 757 F.2d at 1269 n. 2 (rejecting view that alleged in-

fringer's ability to compensate ends court's inquiry).

The focus on the irreparable injury inquiry is harm that is impossible to measure in monetary terms. *See Atlas Powder*, 773 F.2d at 1233. Drexelbrook has alleged that its damages are not fully measurable in monetary legal remedies because its market share and customer base are being eroded by Magnetrol's continued infringement. More than one third of Drexelbrook's total sales is in two-wire transmitter systems covered by claim 1 of the '834 patent. P.App. at 174. Drexelbrook is the industry leader and is "number one [in] admittance [monitoring]." P.App. at 365. Conversely, Magnetrol's chief business is in the mechanical control field. P.App. at 367. However, the two companies compete "head-to-head" in the marketplace for two-wire systems. *Id.* at 366. According to Maltby, Drexelbrook has lost "significant two-wire transmitter system sales" to Magnetrol. P.App. at 169. The specifics of these alleged lost sales, and their quantity and dollar value, has not been substantiated, though.

In light of the comparative importance of admittance monitoring devices to Drexelbrook's business, the evidence at least suggests irreparable harm to Drexelbrook. However, because of the cloud surrounding the validity of the '834 patent and the fact that the evidence of irreparable injury is based on inference, the Court finds that Drexelbrook has not yet made an independent showing of irreparable injury.

### C. *Balance of Hardships and the Public Interest*

In considering the balance of hardships, the Court must balance the harm that will occur to the moving party from the denial of the preliminary injunction with the harm that the non-moving party will incur if the injunction is granted. *Hybritech*, 849 F.2d at 1457. This balancing is within the discretion of the Court. *Atlas Powder Co. v.*

*Ireco Chemicals*, 773 F.2d 1230, 1234 (Fed. Cir.1985).

The balance of equities slightly favors Drexelbrook over Magnetrol. If an injunction does not issue, then Drexelbrook may well suffer loss of profits and market share. This loss would significantly affect Drexelbrook because such a large percentage of its sales derive from systems covered by the '834 patent. P.App. at 173. Conversely, if an injunction does issue, then Magnetrol may suffer loss of profits and market share. However, the harm to Magnetrol will likely be less because two-wire admittance monitoring systems constitute a small percentage (about two percent) of Magnetrol's total sales. Reply Br. at 26 n. 13.

The focus of a district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief. *Hybritech*, 849 F.2d at 1458. As was the case in *Polaroid,* the public interest in this particular industry (admittance monitoring systems) is minimal.[15] *See* 706 F.Supp. at 1146. However, the public does have an interest in the protection of rights found in *valid* patents. *Id.* (citing *Smith Int'l.*, 718 F.2d at 1581). If it were reasonably clear that the '834 patent was valid, then the public interest would likely weigh in favor of Drexelbrook. Because the validity of the '834 patent is anything but clear at this stage of the litigation, the public interest does not favor Drexelbrook over Magnetrol.

### III. CONCLUSION

Weighing the four factors of the preliminary injunction test against one another, the Court finds that it cannot issue a preliminary injunction against defendant for patent infringement at this time. This conclusion is based primarily on Drexelbrook's failure to convince the Court that it has a reasonable likelihood of success on the merits regarding patent validity, specifically nonobviousness. Plaintiff's motion is therefore denied. The Court will enter an Order in accordance with this Opinion.

---

**15.** Two-wire capacitance (admittance) devices, which are the subject of the '834 patent, account for less than five percent of all continuous level measurement systems sold. D.App. 4, at 2.

Contrastingly, differential pressure sensors make up about eighty percent of the continuous liquid level measuring systems used in the United States. *Id.*