**OSCAR MAYER FOODS CORPORATION,**
Plaintiff,

v.

**SARA LEE CORPORATION,**
Defendant.

No. 90–C–43–C.

United States District Court,
W.D. Wisconsin.

June 11, 1990.

Lawrie J. Kobza, Thomas J. Ryan, Madison, Wis., for plaintiff.

Daniel W. Hildebrand, Madison, Wis., for defendant.

## OPINION AND ORDER

CRABB, Chief Judge.

In an opinion and order dated March 21, 1990, I granted plaintiff's motion for a preliminary injunction enjoining defendant from selling its product, LUNCH 'N MUNCH, in a certain package (the red package) on patent infringement grounds. Subsequent to the issuance of this opinion and order, defendant informed the court that it had changed the design of its package (to the white package) and would no longer be using the red package.

Presently before the court is plaintiff's motion for either an amendment of the opinion and order of March 21, 1990 to include the white package, or the issuance of a new preliminary injunction enjoining defendant from using the white package.

Because several features of the white package differ from the red one, I will treat plaintiff's motion as one for a new preliminary injunction. Moreover, because I find that plaintiff has not made a "clear showing," but only a reasonable likelihood, that the white package infringes plaintiff's design patent and because defendant would be harmed disproportionately more than plaintiff in the event of an erroneous preliminary decision, plaintiff's motion will be denied.

Based on the parties' proposed findings of fact, exhibits, and other supporting documents, I find as undisputed the following facts, which track, in part, the facts found to be undisputed in deciding the first motion for a preliminary injunction.

### FACTS

Plaintiff is a successful processor, distributor, and seller of processed meats. Its trademark, "Oscar Mayer," is the leading brand of processed meats in the United States. Defendant owns Bryan Foods, which sells processed meats in the southern United States under the "Bryan" trademark. Plaintiff and defendant are direct competitors in the processed meat business in the south.

A key corporate goal for plaintiff has been the development of new products to satisfy the strong consumer demand for convenience food products. Beginning in 1985, plaintiff began to investigate new food combinations that could be marketed as ready-to-eat snacks. Over one hundred

potential concepts were developed. These concepts were tested with various consumer groups and from this testing emerged what became the LUNCHABLES product.

The regular LUNCHABLES product contains eight slices of meat, cheese, crackers and a napkin. Beginning in September 1987, plaintiff test-marketed its product in Eau Claire, Wisconsin and Grand Junction, Colorado.

During this test period, plaintiff introduced special dispensers, called merchandisers, which were designed to hold the LUNCHABLES packages. These merchandisers fit in refrigerator cases of grocery stores and hold a line of packages upright by bracing them against the front panel of the merchandiser with a spring-loaded mechanism in the back which automatically moves the line forward when a package is removed. Some of these merchandisers bear the Oscar Mayer trademark.

In all, plaintiff spent in excess of $25 million in research and development, market research, test marketing, capital improvements, and other necessary expenditures (exclusive of advertising and promotion) to bring its LUNCHABLES product to market.

Regular marketing of the LUNCHABLES product began in 1988. Presently, LUNCHABLES is in distribution throughout the United States. However, in the southeastern United States, defendant began marketing its product about one month before plaintiff brought its product to that market.

During 1989, before LUNCHABLES was in full national distribution, over $50 million worth of the product was sold at the retail level. Plaintiff expects that during 1990 LUNCHABLES will be one of the few new food products to sell in excess of $100 million in the United States at the retail level.

Plaintiff has supported the introduction of this product with print media and television advertisements, consumer coupons, and trade promotions. From the beginning of the test markets through the end of 1989, plaintiff has spent more than $15 million on advertising and promotion.

The design for the package was created by Yolanda Reifein and Paul Grinrod, who are employees of plaintiff. An application for a design patent covering the package was filed on September 18, 1987. United States Patent No. D–305,204 (the '204 patent) was issued upon this application on December 26, 1989. Reifein and Grinrod assigned plaintiff the patent rights in their design.

The '204 patent consists of a single claim, embodied in a drawing which discloses the following:

(1) a square compartmentalized tray of about 5″ × 5″ × 1.5″ covered with a clear plastic film, and a square carton covering the tray;

(2) a centered, square window in front with rounded corners divided into two smaller upper windows and one larger lower window;

(3) a horizontal strip between the upper and lower windows that has a semi-circular drop on its left-hand side which cuts into the upper left corner of the bottom window;

(4) a vertical strip between the two upper windows placed directly above the semi-circular drop such that the upper left window is approximately one-third of the size of the upper right window;

(5) two upper square tray compartments and one lower rectangular tray compartment, where at least one flange of each tray can be seen through a corresponding window;

(6) stepped bottoms on the tray compartments;

(7) a square, windowless back panel;

(8) two side panels extending the length of the tray;

(9) a top and bottom panel, cut away at each end to disclose a portion of the tray.[1]

---

**1.** The design claimed in the '204 patent differs from the actual LUNCHABLES package in the following respects:

(1) there are no steps on the bottom of the LUNCHABLES tray;

At the time the '204 patent was issued, earlier patents existed covering slightly similar packages. United States Patent No. D265,551 (Colby), covers a square package with a large front window separated by a thick band running across it diagonally. Extending from the top of the package is a header with a hole in it so that the package can be hung from a peg. The Colby design does not show a tray that would fit inside the carton. The patent examiner for the LUNCHABLES package had the Colby patent before him.

United States Patent No. 2,921,673 (Ryan) discloses a rectangular package with three windows on its front panel and which contains a tray with three rows of five to eight various-sized compartments. Food items are placed within these compartments and can be seen through the windows on the front of the package.

United States Patent No. D224,586 (Jewell) involves a food tray which is square, has three compartments (one rectangular compartment facing two smaller squarish ones), and has rounded corners. Although the Jewell and Ryan patents were not before the examiner, United States Patent Nos. D214,075 (Pregont), 4,013,798 (Goltsos), 4,114,760 (Entenmann), and 3,224,618 (Vigue) were. The Pregont patent discloses a squarish food tray with three compartments, one long rectangular section opposing two smaller square ones. The Goltsos patent displays a five-compartmented, square tray enclosed within a carton with non-centered windows. Entenmann shows a rectangular tray with six circular compartments (for holding muffins) contained within a cardboard box with a centered, rectangular window in front. The Vigue patent reveals a square box with a window in front enclosing a tray with six rows of six uniform compartments each designed to hold an egg. Additionally, the examiner had before him the food tray for "Little Oscar's Lunch Fixings," a square, three-compartmented food tray with two square compartments facing a rectangular one.

Defendant has spent much time and money exploring various package shapes and styles in which to market its product, LUNCH 'N MUNCH. The current LUNCH 'N MUNCH package (the white package) has the following features:

(1) a square compartmentalized tray of about $5'' \times 5'' \times 1.5''$ covered with a clear plastic film, and a square carton covering the tray;

(2) a centered, square window in front with rounded corners divided by a diagonal strip to form nearly congruent upper and lower windows;

(3) a slight dip in the upper left-hand corner of the top window;

(4) one upper rectangular tray compartment facing two lower square compartments, where at least one flange of each tray can be seen through the corresponding window;

(5) smooth bottoms on the tray compartments;

(6) a square, windowless back panel;

(7) top and bottom panels extending the length of the tray;

(8) two side panels that are cut away at each end in a semi-elliptical shape to disclose a portion of the tray.

## OPINION

Injunctive relief in patent cases is authorized by statute, which places the decision to grant or deny the requested relief within the discretion of the court. 35 U.S.C. § 283. "The district court's discretion is not absolute, however, and must be measured against the standards governing the issuance of injunctions." *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1579 (Fed.Cir.1983).

An applicant for a preliminary injunction against alleged patent infringe-

(2) the proportion of the cutouts in the top and bottom panels of the LUNCHABLES package is smaller than is depicted in the patent;
(3) the size of the vertical strip between the two upper windows is larger on the package than the patent indicates;

(4) the tray is placed in the carton with large component up, the opposite of the design claimed in the patent.

ment must demonstrate the need for such relief in light of four factors:

> (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) the balance of hardships tipping in its favor; and (4) the impact of the injunction on the public interest.

*Hybritech Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1451 (Fed.Cir.1988). None of these factors is dispositive in itself. Rather, the court must weigh and measure each factor against the others in light of the magnitude of the relief requested. *Id.* However, if the movant makes a clear showing of patent validity and infringement, irreparable harm will be presumed. *Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 1271 (Fed.Cir.1985). On the other hand, if the movant can establish only a reasonable likelihood of succeeding on the issues of validity and infringement, separate showings of irreparable injury, favorable balance of hardship, and the public interest are required. *Id.* at 1272 n. 5.

### A. Likelihood of Success

■ In seeking an injunction pursuant to § 283, a patent holder must establish a reasonable likelihood of success on the merits for both validity and infringement. *Hybritech,* 849 F.2d at 1451. In the opinion and order of March 21, 1990, I concluded that plaintiff had carried its burden for preliminary injunction purposes with respect to the validity of the '204 patent.[2] Because the motion presently before the court seeks the same relief, there is no need to re-address the issue of the patent's validity.

■ With respect to infringement, plaintiff must establish that there is a reasonable likelihood that it will show by preponderant evidence at trial that defendant appropriated the novel features of its de-

sign. *Lee v. Dayton–Hudson Corp.,* 838 F.2d 1186, 1187 (Fed.Cir.1988). The test for determining whether such an infringement has occurred is now well established:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871).

■ However, in addition to overall similarity, " 'the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art.' " *Avia Group International, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1565 (Fed.Cir.1988) (quoting *Shelcore, Inc. v. Durham Industrial, Inc.,* 745 F.2d 621, 628 n. 16 (Fed.Cir.1984)). In other words, to establish infringement, the similarities shared by the two designs must include the novelty that distinguished the patented article from the prior art.

■ Because much of the prior art possesses features present in the '204 patent, its novelty is highly specific to the design. Little Oscar, Pregont, and Jewell all disclose square trays with three compartments, two square facing one rectangular. Ryan, Vigue, Entenmann, and Goltsos reveal compartmented trays enclosed in boxes with a front window or windows. And Colby displays a square carton with a squarish window in front separated by a diagonal band cutting across it.

Despite these common features, there are aspects of the '204 patent that separate it from the prior art. Although Little Oscar, Pregont, and Jewell disclose trays sim-

2. In the March 21 opinion and order, I held that plaintiff had met the burden imposed by the Court of Appeals for the Seventh Circuit that plaintiff show a " 'better than negligible' chance of succeeding on the merits." Opinion and Order at p. 11, *quoting International Kennel Club v. Mighty Star, Inc.,* 846 F.2d 1079, 1084 (7th Cir.1988). However, further research has revealed that the law of the Court of Appeals for the Federal Circuit governs motions for prelimi-

nary injunctions to enjoin alleged patent infringements. *Hybritech,* 849 F.2d at 1451 n. 12. Under the Federal Circuit's standard plaintiff must show a reasonable likelihood of success on the merits. *Id.* at 1451. Although it may be arguable that the Federal Circuit's standard is more rigorous than the Seventh Circuit's, under either standard plaintiff has met its burden with respect to the patent's validity for purposes of its motion for a preliminary injunction.

ilar to the patent, none of these place the tray within a windowed carton. Ryan, Vigue, Entenmann, and Goltsos do place compartmented trays into windowed boxes, but none suggest placing a band across the middle of the window or cutting out portions of the carton's panels to reveal portions of the tray. Colby does place a strip across its window, but the carton does not contain a tray, its side panels are all full-length, and the package has a header so that it may be hung from a peg.

Therefore, the novelty of the '204 patent consists of the *combination* of (1) a square, three-compartmented, bottom-stepped, $5'' \times 5'' \times 1.5''$ tray; (2) a cardboard box of the same proportions (which contains the tray) with a centered window in front with rounded corners which is divided by a horizontal strip across and a vertical strip from the horizontal to the top; (3) a view of the three food items contained in the tray through the front windows; (4) a windowless back panel; and (5) full-length panels on the sides and partially cut-out panels on the top and bottom.

A significant portion of this combination can be found in defendant's current package. Although defendant's package does not include a stepped tray, does not have three windows, does not have similar panel cut-outs, and has a different configuration in front, it does contain many of the distinctive characteristics of the '204 patent. These common features include a $5'' \times 5'' \times 1.5''$, three-compartmented tray; a similarly sized carton with a square, centered front window with rounded corners; a band traversing the front window dividing it into smaller windows through which the food items contained within can be seen; cut-out panels that reveal the tray inside the carton; and a windowless back panel.

These similarities do not amount to a "clear showing" of patent infringement. However, in light of the many features shared by the '204 patent and defendant's package, I conclude that there is a reasonable likelihood that plaintiff will prevail on its infringement claim at trial.

## B. Irreparable Harm

When a clear showing of validity or infringement is not made, the court's inquiry under this factor is whether plaintiff has alleged harm that is impossible to measure in monetary terms. *Drexelbrook Controls v. Magnetrol International*, 720 F.Supp. 397, 408 (D.Del.1989).

Although plaintiff has not shown that it stands to lose market share or customer base if defendant is allowed to continue selling its product in its current packaging, the facts establish that plaintiff has expended large sums of money in marketing its LUNCHABLES product. Also, plaintiff and defendant are direct competitors in the southern United States, which means that they are both trying to influence the same group of consumers. Therefore, as I concluded in the prior opinion and order, irreparable harm is shown by the fact that plaintiff has spent a large sum on marketing and by its argument that it stands to lose a part of the retail market that it would otherwise command absent the alleged infringement.

## C. Balance of Hardships

Plaintiff argues that the hardship it will suffer if the injunction is denied is greater than the hardship defendant will suffer if the injunction is granted because plaintiff stands to lose a portion of its market share whereas defendant would only be required to market its product in a new package. However, defendant contends that the balance tips in its favor because any halt in its marketing efforts at this early stage of its product's distribution would subject it to substantial profit losses. Moreover, it argues, plaintiff would not be harmed if the injunction were denied because no one is mistaking one product for the other in the first place.

In the opinion and order of March 21, 1990, I decided to disregard this factor because neither plaintiff or defendant substantiated the extent to which it would be injured in the event of an adverse decision. However, the situation now is different from what it was in March. Most significant, plaintiff has not made as strong a

showing that it is likely to succeed on the merits as it did with the red package. The Court of Appeals for the Federal Circuit has indicated that the balance-of-hardship inquiry should be guided by the strength of plaintiff's showing that it will succeed at trial.

> The magnitude of the threatened injury to the patent owner is weighed, *in the light of the strength of the showing of the likelihood of success on the merits,* against the injury to the accused infringer if the preliminary decision is in error.

*H.H. Robertson, Co. v. United Steel Deck, Inc.,* 820 F.2d 384, 390 (Fed.Cir.1987) (emphasis added). (This analysis comports with the Seventh Circuit's directive in *Roland Machinery Co. v. Dresser,* 749 F.2d 380, 387 (7th Cir.1984): "The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.").

Against the consideration that plaintiff has not made as strong a showing of likelihood of success weighs the factor that another injunction would force defendant to scrap its current packaging again and develop a new design. Moreover, although the potential for plaintiff to lose customer share due to confusion over the products may be real, plaintiff is competing with defendant in a part of the country where consumers are familiar with defendant's name, and thus are not as prone to confuse defendant's product for plaintiff's. Additionally, this case has been set for an expedited trial, which puts a limit on plaintiff's risk of losing market share and customer base but which does not mitigate the upfront expenses to defendant of scrapping its current inventory and issuing a new package. For these reasons, the balance of hardships weighs in favor of defendant.

### D. Public Interest

■ Under this factor the focus is whether there is an important public interest that would be injured if the injunction were granted. *Hybritech,* 849 F.2d at 1458. Defendant argues that the public's interest in legitimate competition would be harmed if the injunction were entered. However, this argument is at least partially thwarted by plaintiff's showing of a reasonable likelihood of success on the merits of its claim for patent infringement, for the nature of the patent laws is to grant a patent holder a preemptive position over otherwise legitimate competitors. Moreover, where validity and continued infringement are shown, failure to grant an injunction has been held to be "contrary to the public policy underlying the patent laws." *Smith International,* 718 F.2d at 1581. Accordingly, because plaintiff has shown a reasonable likelihood of success on its patent infringement claim, the public interest factor weighs in its favor.

### Conclusion

■ Although three of the four factors weigh in favor of granting plaintiff's motion, the conclusion that defendant stands to suffer disproportionately more than plaintiff in the event of a wrong preliminary decision dictates against such a resolution. Accordingly, plaintiff's motion for a preliminary injunction will be denied.

### ORDER

IT IS ORDERED that plaintiff's motion for a preliminary injunction enjoining defendant from selling its product, LUNCH 'N MUNCH, in that product's current packaging is DENIED.