68 F.3d 487
 37 U.S.P.Q.2d 1337
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CIBA-GEIGY CORPORATION, Plaintiff-Appellant,
v.
ALZA CORPORATION and Marion Merrell Dow, Inc., Defendants-Appellees.
 No. 95-1046.
 United States Court of Appeals, Federal Circuit.
 Oct. 11, 1995.
 
 Before MAYER, RADER, and SCHALL, Circuit Judges.
 Opinion for the court filed by Circuit Judge SCHALL. Dissenting opinion filed by Circuit Judge RADER.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 Ciba-Geigy Corporation ("Ciba") appeals the October 5, 1994 judgment of the United States District Court for the District of New Jersey granting the motion of Alza Corporation and Marion Merrell Dow, Inc. (collectively, "Alza") for summary judgment of invalidity of claims 1, 2, 4, 5, and 7 of U.S. Patent No. 5,016,652 (the " '652 patent"), which is assigned to Ciba. Ciba-Geigy Corp. v. Alza Corp., 864 F.Supp. 429, 33 USPQ2d 1018 (D.N.J.1994). In a decision dated October 5, 1994, the court held that those claims were invalid under 35 U.S.C. Sec. 102(b) over a published letter to the editor of Nature magazine. We affirm in part, vacate in part, and remand.
 
 DISCUSSION
 I.
 
 2
 In its suit, Ciba alleged that Alza's NICODERM transdermal nicotine delivery patch infringed claims 1, 2, 4, 5, and 7 of the '652 patent. Ciba, 864 F.Supp. at 431, 33 USPQ at 1019. Alza counterclaimed for a declaration that the asserted claims were invalid under 35 U.S.C. Sec. 102(b). Id. In due course, Alza moved for summary judgment, arguing that the asserted claims were invalid under 35 U.S.C. Secs. 102(b) and 103 over a letter by Dr. Cecil H. Fox to the editor of Nature magazine (the "Fox reference"), published January 19, 1984.[1] The pertinent portion of the Fox reference reads as follows:
 
 
 3
 Alternative routes of drug administration more cosmetic than chewing tobacco or snuffs should be developed so that the nicotine addict has alternatives to cigarettes. Nicotine chewing gum has had limited success, but may soon become available worldwide. Another alternative might be transdermal application much in the manner of nitroglycerine and scopolomine [sic] patches. Nicotine "inhalers" might also be feasible if dosage could be adjusted.
 
 
 4
 Also in support of its motion, Alza submitted the declaration of Dr. Brian Barry. In his declaration, Dr. Barry described how, based on the Fox reference, "a person skilled in the art could make a nicotine patch" that achieved blood levels of nicotine comparable to those produced by a known nicotine chewing gum, and how such a patch would include all of the elements claimed in claims 1 and 2. Id. at 432, 33 USPQ2d at 1019.
 
 
 5
 The district court found that no material facts were in dispute, and held that the Fox reference anticipated claims 1 and 2. Id. at 439, 33 USPQ2d at 1026. The court also held that the Fox reference anticipated claim 4, because in its view the reference taught a person of ordinary skill in the art to make a nicotine patch that would deliver nicotine to the bloodstream at a rate sufficient to correspond to the level induced by smoking, as required in that claim. Id. The court went on to state that "[b]ecause Claims 5 and 7 depend from Claim 4 and thus contain all of the limitations of Claim 4, this Court finds Claims 5 and 7 of the '652 patent are also anticipated by the Fox reference." Id. The court did not address Alza's obviousness arguments.
 
 II.
 
 6
 Summary judgment is appropriate only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing the granting of summary judgment by a trial court, an appellate court determines for itself whether the standards for summary judgment have been met, and the appellate court is not bound by the trial court's ruling that there was no dispute as to any material fact. Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1041 (Fed.Cir.1994). Section 102(b), which speaks to anticipation, requires that "each and every element as set forth in the claim [be] found, either expressly or inherently described, in a single prior art reference." Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1570 (Fed.Cir.), cert. denied, 488 U.S. 892 (1988). Whether a reference is anticipatory is a question of fact. In re Lowry, 32 F.3d 1579, 1582 (Fed.Cir.1994).
 
 A. Claims 1 and 2
 
 7
 Claim 1 of the '652 patent reads as follows:
 
 
 8
 1. A patch adapted for application to the skin of a user for the transdermal administration of nicotine to the user, said patch comprising:
 
 
 9
 (a) an outer layer which is impermeable to the passage of nicotine,
 
 
 10
 (b) an inner layer adapted to be placed on the surface of a user's skin, said inner layer being sufficiently porous to enable the passage of nicotine therethrough for transdermal application to the bloodstream of a user,
 
 
 11
 (c) means associated with said patch to enable said patch to be temporarily and releasably attached to the skin of a user, and
 
 
 12
 (d) said outer layer and said inner layer forming a nicotine receiving area for receiving nicotine to allow the nicotine to pass through the inner layer.
 
 
 13
 Col. 17, 1.61-col. 18, 1.8. Claim 2 is a dependent claim. It claims "[t]he patch of claim 1 further characterized in that said patch is provided with a membrane in the nicotine receiving area to receive and enable a release of the nicotine." Col. 18, 11.9-12.
 
 
 14
 Ciba argues that, as far as claims 1 and 2 are concerned, material issues of fact exist as to "(1) whether the Fox letter is too speculative to be a complete disclosure of the inventions of those claims, and (2) whether the district court erred in expanding the Fox letter by 'reading into' it extrinsic information not necessarily inherent in the Fox letter." We address these contentions in reverse order.
 
 
 15
 "[E]xtrinsic evidence may be considered when it is used to explain, but not expand, the meaning of a reference." In re Baxter Travenol Labs., 952 F.2d 388, 390, 21 USPQ2d 1281, 1284 (Fed.Cir.1991) (citing Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1566-67, 18 USPQ2d 1001, 1010 (Fed.Cir.1991)). Thus, although references cannot be combined for purposes of anticipation, additional references may be used to interpret the allegedly anticipating reference and shed light on what it would have meant to those skilled in the art at the time of the invention. Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc., 726 F.2d 724, 726-27, 220 USPQ 841, 842 (Fed.Cir.1984). However, "such evidence must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill." Continental Can Co. USA Inc. v. Monsanto Co., 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed.Cir.1991).
 
 
 16
 Ciba argues that the district court improperly used extrinsic evidence, in the form of three known nitroglycerine patches, one known scopolamine patch, and associated product literature, to supplement the disclosure of the Fox reference. According to Ciba, the Fox reference did not "necessarily" describe the particular nitroglycerin or scopolamine patch to be used in constructing a transdermal nicotine delivery patch. Ciba argues that because there were two other nitroglycerin patches and one other scopolamine patch that Dr. Barry could have chosen for his experiments, the particular nitroglycerin patch chosen by Dr. Barry was not the one "necessarily" described by the Fox reference. Ergo, it was improper for the court to rely on the extrinsic evidence used by Dr. Barry in making a nicotine patch according to the Fox reference.
 
 
 17
 We reject Ciba's argument. We have carefully reviewed the Barry declaration and are satisfied that it does not go beyond explaining what the Fox reference would have meant to those skilled in the art in 1984.[2] Nor has Ciba established any disputed issues of material fact on this point.
 
 
 18
 Ciba's second argument is that there are disputed issues of material fact with respect to whether the Fox reference "represents mere speculation and conjecture regarding transdermal nicotine patches." We disagree. First, the Fox reference recommends the development of "[a]lternative routes of [nicotine] administration more cosmetic than chewing tobacco or snuffs." The express suggestion in the reference to substitute nicotine for the drug in an existing nitroglycerine or scopolamine patch, when made to one of ordinary skill in the art of transdermal drug delivery, is both definite and specific.
 
 
 19
 Second, as noted above, Alza supported its motion for summary judgment with the Barry declaration. In addition to what he said in his declaration, at his deposition Dr. Barry testified as follows with respect to the Fox reference:
 
 
 20
 "All the elements of the patent are there. The Fox article refers to absorption of nicotine through the buckle [sic] membrane of the mouth, through chewing gum. It suggests that an alternative way of delivering nicotine would be by a transdermal means, and it specifically taught to put the nicotine into a commercial patch, such as nitroglycerine and scopolomine [sic ]." I said that from what I could see you could put the nicotine into the Transderm-Nitro patch and you would achieve blood levels of nicotine appropriate for smoking cessation therapy.
 
 
 21
 Dr. Barry then went on to describe his experiment with the Transderm-Nitro patch.
 
 
 22
 In opposition to Alza's motion for summary judgment, Ciba presented the declarations of Drs. Enscore, Jed Rose, and Martin Jarvis. We agree with the district court, however, that neither the Enscore nor the Rose declaration raises a genuine issue of material fact. Ciba, 864 F.Supp. at 433-34, 33 USPQ2d at 1021. Turning to the third item, in his declaration Dr. Jarvis expressed the opinion that the Fox reference "is a speculative disclosure which merely mentions administering nicotine transdermally as one of three possibilities for administering nicotine that are 'more cosmetic' then chewing tobacco or snuff." According to Dr. Jarvis, "Fox also does not state whether any of the possibilities would deliver the correct dosage of nicotine to satisfy a smoker's demand for nicotine, or whether any of these possibilities would deliver nicotine with sufficient rapidity to satisfy a smoker." Dr. Jarvis did not take issue, though, with either the Fox reference's or Dr. Barry's statements with respect to the transdermal application of nicotine through patches. Neither did Dr. Jarvis take issue with Dr. Barry's statement concerning what the Fox reference would have meant to one skilled in the art in 1984. Dr. Jarvis's statement quoted above to the effect that the Fox reference does not address the efficacy of the transdermal delivery of nicotine through patches is not pertinent to claims 1 and 2. These claims do not require any particular level of nicotine delivery. They merely recite, in clause (b) of claim 1, a patch with an "inner layer being sufficiently porous to enable the passage of nicotine therethough for transdermal application to the bloodstream of a user," and, in claim 2, a patch "with a membrane in the nicotine receiving area to receive and enable a release of the nicotine."
 
 
 23
 Finally, Ciba claims that the Fox reference would not have enabled one of ordinary skill in the art to make the claimed invention because, in addition to the nitroglycerin patch selected by Dr. Barry for his experiment, at least three other types of nitroglycerin/scopolamine patches existed that arguably would not have resulted in the claimed invention. Stated differently, according to Ciba, it would have required undue experimentation for one of ordinary skill in the art to have made the claimed invention based on the Fox reference, and thus the Fox reference is not an enabling reference.[3]
 
 
 24
 The key to analyzing an "undue experimentation" attack on the enablement of a patent, and therefore of an anticipatory reference, is in determining what is "undue," because some trial and error is permissible. See W.L. Gore & Assocs. v. Garlock, Inc., 721 F.2d 1540, 1557, 220 USPQ 303, 316 (Fed.Cir.1983) ("Assuming some experimentation were needed, a patent is not invalid because of a need for experimentation. A patent is invalid only when those skilled in the art are required to engage in undue experimentation to practice the invention." (cite omitted) (emphasis in original)), cert. denied, 469 U.S. 851 (1984). Ciba implicitly contends that choosing between four available nitroglycerin/scopolamine patches represents undue experimentation for someone of skill in the art, or at least that fact issues surround a determination as to whether or not that is true.
 
 
 25
 Dr. Barry testified at his deposition that replacing scopolamine with nicotine "practically would be a bit difficult because the patch is so small to clean out, put material in and reseal." This is evidence not that undue experimentation is required, but rather that one of ordinary skill in the art would pursue more promising options (known nitroglycerin patches) rather than less promising ones (the known scopolamine patch). Similarly, Ciba contends that "the experiments Dr. Barry sets out as being relatively straightforward for Transderm-Nitro [the patch actually tested by Dr. Barry] probably would be far more difficult, if not impossible, for the other available nitroglycerin and scopolamine patch constructions." Ciba's proposition does not help it, though, for it supports the conclusion that experimentation with the other patches would be "difficult, if not impossible," and therefore not readily undertaken by one of ordinary skill in the art.
 
 
 26
 For the foregoing reasons, as far as claims 1 and 2 are concerned, we hold that Ciba has failed to demonstrate the existence of any genuine issues of material fact as to whether the Fox reference properly serves as an anticipatory reference. Accordingly, we affirm the district court's grant of summary judgment of invalidity with respect to those claims.
 
 B. Claims 4, 5, and 7
 
 27
 Claim 4 of the '652 patent is an independent claim; claims 5 and 7 depend from it. Claim 4 recites a patch with "a dermally applicable pad" with "a rate controlling membrane ... adapted to be placed adjacent a user's skin to allow the nicotine ... to transdermally migrate into the person's bloodstream at a rate sufficient to correspond to the nicotine level in the blood achieved by smoking." Col. 18, 11.20-31. Claim 5 recites a patch as in claim 4 which "comprises at least 8 milligrams of nicotine therein." Col. 18, 11.33-34. Claim 7 recites the patch of claim 4, with the patch comprising "a sufficient amount of nicotine and ... constructed [so as] to transdermally administer the nicotine ... to maintain about 50 to about 250 micrograms of nicotine in the bloodstream." Col. 18, 11.41-44.
 
 
 28
 The Fox reference does not address at all the nicotine levels required by claims 4, 5, and 7. Dr. Barry learned the levels from material outside the Fox reference. Moreover, Dr. Barry added twice as much nicotine as nitroglycerine to correspond to the nicotine level in the blood achieved by smoking. Thus, Dr. Barry not only had to consult references beyond the Fox letter, but he also had to adjust the drug levels disclosed in those outside references. Dr. Barry conducted experimentation beyond the routine. The Fox reference does not anticipate claims 4, 5, and 7.
 
 
 29
 We express no view as to whether combining Fox and other references would render the invention claimed in claims 4, 5, and 7 obvious. Obviousness was not addressed by the district court. Issues of material fact about a prima facie obviousness case, let alone secondary considerations, have not been resolved.
 
 
 30
 In sum, we affirm the judgment of invalidity of claims 1 and 2, vacate the judgment of invalidity of claims 4, 5, and 7, and remand the case to the district court for further proceedings consistent with this opinion.
 
 
 31
 Each party shall bear its own costs.
 
 
 32
 RADER, Circuit Judge, dissenting-in-part.
 
 
 33
 The court's opinion concludes that one paragraph in a letter sent to the editors of Nature magazine anticipated claims 1 and 2 of the '652 patent. In its entirety the Fox paragraph reads:
 
 
 34
 Alternative routes of drug administration more cosmetic than chewing tobacco or snuffs should be developed so that the nicotine addict has alternatives to cigarettes. Nicotine chewing gum has had limited success, but may soon become available worldwide. Another alternative might be transdermal application much in the manner of nitroglycerine and scopolomine [sic] patches. Nicotine "inhalers" might also be feasible if dosage could be adjusted.
 
 
 35
 Only one ambiguous sentence addresses the claimed invention at all. The Fox reference does not contain each and every element of claim 1 or claim 2 because it is vague and speculative. Instead of using extrinsic evidence to merely explain the Fox reference, this court expands its meaning. See In re Baxter Travenol Labs., 952 F.2d 388, 390, 21 USPQ2d 1281, 1284 (Fed.Cir.1991) (citing Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1576-77, 18 USPQ2d 1001, 1010 (Fed.Cir.1991)).
 
 
 36
 Furthermore, the record includes evidence that one of ordinary skill in the art does not find the Fox reference anticipating. Dr. Jarvis in his declaration states that the "Fox letter is a speculative disclosure" that does not even state "whether transdermal nicotine patches ... would be an effective means of" delivering nicotine.
 
 
 37
 Because one of ordinary skill in the art could find that the Fox reference is speculative, issues of material fact remain and this case is not ripe for summary judgment. Therefore, I must respectfully dissent as to the anticipation of claims 1 and 2. I, however, concur with the court's opinion regarding claims 4, 5 and 7.
 
 
 
 [1]
 The Fox reference is prior art against the '652 patent under 35 U.S.C. Sec. 102(b) because it was published more than one year prior to the February 19, 1988 filing date of the application that matured into the '652 patent
 
 
 [2]
 The district court determined that, for purposes of this case, the person of ordinary skill in the art is one "skilled in the science of delivering drugs transdermally." Neither party has disputed that determination
 
 
 [3]
 An anticipatory reference must be enabling, see Akzo N.V. v. United States Int'l Trade Comm'n, 808 F.2d 1471, 1479, 1 USPQ2d 1241, 1245 (Fed.Cir.1986), cert. denied, 482 U.S. 909 (1987), so as to place one of ordinary skill in possession of the claimed invention. In re Spada, 911 F.2d 705, 708, 15 USPQ2d 1655, 1657 (Fed.Cir.1990); see Seymour v. Osborn, 78 U.S. 516, 555 (1870) ("[T]he knowledge supposed to be derived from the publication must be sufficient to enable those skilled in the art or science to understand the nature and operation of the invention.")